HOLLAND & KNIGHT LLP
Vito A. Costanzo, SBN 132754
Kristina S. Azlin, SBN 235238
Stacey H. Wang, SBN 245195
Qian (Sheila) Shen, SBN 332048
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Fax: 213.896.2450
Email:  vito.costanzo@hklaw.com
        kristina.azlin@hklaw.com
        stacey.wang@hklaw.com
        qian.shen@hklaw.com

Attorneys for Defendant
University of the Pacific

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VINEY SAROYA, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF THE PACIFIC,<br><br>Defendant. | Case No.: 5:20-cv-03196-EJD<br><br>[*Assigned to the Hon. Edward J. Davila, United States District Judge*]<br><br>**DEFENDANT UNIVERSITY OF THE PACIFIC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF VINEY SAROYA'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Fed. R. Civ. P. 8, 12(b)]<br><br>Date:      November 19, 2020<br>Time:      9:00 a.m.<br>Courtroom:  4<br><br>[Filed concurrently with Declaration of Dr. Maria Pallavicini; Declaration of Kristina S. Azlin; and Request for Judicial Notice]<br><br>Action Filed:   May 10, 2020<br>Trial Date:     TBD |

*Side text:* Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on November 19, 2020, at 9:00 a.m. or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Edward J. Davila, Courtroom 4, of the United States District Court for the Northern District of California, San Jose Courthouse, located at 280 South 1st Street, San Jose, CA 95113, Defendant University of the Pacific ("Pacific") will, and hereby does, move this Court for an order under Federal Rules of Civil Procedure 12(b)(6), dismissing the claims filed in this action by Plaintiff Viney Saroya ("Plaintiff") against the Defendant in their entirety, with prejudice.

Defendant moves to dismiss each of Plaintiff's claims based on the following grounds:

1.  All of Plaintiff's causes of action fail because they are fundamentally non-actionable claims for educational malpractice.

2.  Plaintiff's breach of contract claim fails as a matter of law and a matter of pleading.

3.  Plaintiff's unjust enrichment claim fails as a matter of law and a matter of pleading.

4.  Plaintiff's money had and received claim fails as a matter of law and a matter of pleading.

5.  Plaintiff's conversion claim fails as a matter of law and a matter of pleading.

6.  All of Plaintiff's causes of action fail to allege non-speculative damages.

7.  Plaintiff's demand for punitive damages is unsupportable as a matter of law.

This Motion is based on this Notice; the Memorandum of Points and Authorities in Support of the Motion to Dismiss; the Declaration of Dr. Maria Pallavicini; the Declaration of Kristina S. Azlin; the Request for Judicial Notice; and all papers, pleadings, documents, arguments of counsel, and other materials presented before or during the hearing on this motion, and any other evidence and argument the Court may consider.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

-1-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

DATED: October 7, 2020

Respectfully submitted,

HOLLAND & KNIGHT LLP


By */s/  Vito A. Costanzo*

Vito A. Costanzo
Kristina S. Azlin
Stacey H. Wang
Qian (Sheila) Shen

Attorneys for Defendant,
University of the Pacific

-2-

UNIVERSITY OF THE PACIFIC'S
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

CASE NO. 5:20-CV-03196-EJD

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................... ii

I.   INTRODUCTION ............................................................................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND .......................................... 3

    A.   Pacific's Policies Are Set Forth in the Academic Catalog ........................ 3

    B.   Pacific Responds to the COVID-19 Pandemic ........................................ 3

    C.   Plaintiff's First Amended Complaint. ...................................................... 5

III. LEGAL STANDARD .......................................................................................... 5

IV.  ARGUMENT ....................................................................................................... 6

    A.   Plaintiff's Claims Are Fundamentally Demands For Judicial Intervention In Academic Decisions Regarding Mode Of Instruction, Which Are Not Actionable. .............................................. 6

    B.   Plaintiff's Claim For Breach Of Contract Fails As A Matter Of Law. ...................................................................................................... 9

        1.   Plaintiff Fails To Identify Any Enforceable Promise That Was Breached. .................................................................................. 9

        2.   Pacific's Policies Include A Financial Agreement And Refund Policy, Which Do Not Entitle Plaintiff To Any Partial Refunds. .......................... 12

        3.   Pacific Did Not Cause Damages to Plaintiff. ............................. 13

    C.   Plaintiff's Claim For Unjust Enrichment Or Quasi-Contract Fails As A Matter Of Law. ............................................................................ 14

        2.   Plaintiff's Claim for Money Had and Received Fails. ................. 15

    D.   Plaintiff's Conversion Claim Fails As A Matter Of Law. ........................ 16

        1.   No Claim For Conversion Can Arise From Alleged Overcharges. ........... 17

        2.   Plaintiff Fails To Allege Facts Establishing The Elements Of Conversion. .............................................................................. 17

    E.   Plaintiff's Demands For Speculative Damages Warrants Dismissal of All Causes of Action. ...................................................................... 19

    F.   None Of Plaintiff's Claims Entitle Plaintiff To An Award Of Punitive Damages. ................................................................................ 20

V.   CONCLUSION .................................................................................................. 22

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

UNIVERSITY OF THE PACIFIC'S
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

CASE NO. 5:20-CV-03196-EJD

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Advanced Riggers & Millwrights, LLC v. Hoist Liftruck MFG, Inc.*,
5   No. 15-1400, 2015 WL 12860470 (C.D. Cal. Oct. 29, 2015).............................................. 16, 17

6

*Alsides v. Brown Inst. Ltd.*,
7   592 N.W.2d 468 (Minn. App. 1999)........................................................................................ 19

8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................................... 5, 20

9

*Balistreri v. Pacifica Police Dep't*,
10   901 F.2d 696 (9th Cir. 1990) .................................................................................................... 5

11

*Bank of N.Y. v. Fremont Gen. Corp.*,
   523 F.3d 902 (9th Cir. 2008) .................................................................................................. 17

12

*Banks v. Dominican Coll.*,
13   35 Cal. App. 4th 1545 (1995) ............................................................................................... 6, 8

14

*Bell Atl. Corp. v. Twombly*,
15   550 U.S. 544 (2007)........................................................................................................... 5, 20

16

*Beukas v. Bd. of Trs. of Farleigh Dickinson Univ.*,
   605 A.2d 708 (N.J. Super. Ct. 1992) ...................................................................................... 11

17

*Brousseau v. Jarrett*,
18   73 Cal. App. 3d 864 (1977) .................................................................................................... 20

19

*Durell v. Sharp Healthcare*,
20   183 Cal. App. 4th 1350 (2010) .............................................................................................. 14

21

*Evans v. BBG Commc'ns., Inc.*,
   No. 10-0542, 2010 WL 11508738 (S.D. Cal. June 18, 2010) ................................................ 17

22

*Farmers Ins. Exch. v. Zerin*,
23   53 Cal. App. 4th 445 (1997) ................................................................................................... 16

24

*Farrington v. A. Teichert & Son, Inc.*,
   59 Cal. App. 2d 468 (1943) .................................................................................................... 17

25

*First Nationwide Sav. v. Perry*,
26   11 Cal. App. 4th 1657 (1992) ................................................................................................. 14

27

-ii-

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

*Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co.*,
  185 Cal. App. 3d 1149 (1986) ................................................................................. 21

*Gokool v. Okla. City Univ.*,
  716 F. App'x 815 (10th Cir. 2017) ......................................................................... 15

*Gomez-Jimenez v. N.Y. Law Sch.*,
  36 Misc. 3d 230 (N.Y. Sup. Ct. 2012) .............................................................. 19, 20

*Gonzales Commc'ns, Inc. v. Titan Wireless, Inc.*,
  No. 04-cv-147, 2007 WL 1994057 (S.D. Cal. Apr. 18, 2007) ............................... 14

*Henderson v. Sec. Nat'l Bank*,
  72 Cal. App. 3d 764 (1977) ..................................................................................... 21

*Hilliard v. A.H. Robins Co.*,
  148 Cal. App. 3d 374 (1983) ................................................................................... 21

*Holly v. Alta Newport Hosp., Inc.*,
  -- F. Supp. 3d --, 2020 WL 1853308 (C.D. Cal. Apr. 10, 2020) ........................... 19

*Hunter v. Bd. of Ed. of Mont. Cnty.*,
  439 A.2d 582 (Md. 1982) ......................................................................................... 19

*Jallali v. Nova Se. Univ., Inc.*,
  992 So. 2d 338 (Fla. 4th Dist. Ct. App. 2008) ................................................... 11, 12

*Jurisearch Holdings, LLC v. Lawriter, LLC*,
  No. 08–03068, 2009 WL 10670588 (C.D. Cal. Apr. 13, 2009) .............................. 18

*Kabir v. Flagstar Bank, FSB*,
  No. 16-0360, 2016 WL 10999326 (C.D. Cal. May 11, 2016) ................................. 20

*Kashmiri v. Regents of Univ. of Cal.*,
  156 Cal. App. 4th 809 (2007) .............................................................................. 9, 10

*Klein v. Chevron U.S.A., Inc.*,
  202 Cal. App. 4th 1342 (2012) ................................................................................ 14

*Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*,
  34 Cal. 4th 960 (2004) ............................................................................................. 21

*LSSC LLC v. Wilco Life Ins. Co.*,
  No. 19-1854, 2019 WL 4570026 (C.D. Cal. Aug. 14, 2019) ..................................... 6

*Major v. W. Home Ins. Co.*,
  87 Cal. Rptr. 3d 556 (Ct. App. 2009) ...................................................................... 21

-iii-

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

*McBride v. Boughton,*
    123 Cal.App.4th 379 (2004) .......................................................................... 16

*McCabe v. Marywood Univ.,*
    166 A.3d 1257 (Pa. Super. Ct. 2017) ............................................................ 15

*McDonnell v. Am. Tr. Co.,*
    130 Cal. App. 2d 296 (1955) ......................................................................... 20

*McKell v. Wash. Mut., Inc.,*
    142 Cal. App. 4th 1457 (2006) ...................................................................... 17

*Mihalakis v. Cabrini Med. Ctr. (CMC),*
    151 A.D.2d 345 (N.Y. App. Div. 1989) ........................................................ 19

*Miller v. Loyola Univ. of New Orleans,*
    829 So.2d 1057 (Lou. Ct. App. 2002) ........................................................... 15

*Oakdale Vill. Grp. v. Fong,*
    43 Cal. App. 4th 539 (1996) .......................................................................... 17

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.,*
    96 F.3d 1151 (9th Cir. 1996) ......................................................................... 22

*Paulsen v. Golden Gate Uni.,*
    25 Cal. 3d 803 (1979) ............................................................................ 7, 8, 9

*Pepin v. Hansing,*
    No. 13CA3552, 2013 WL 5433354 (Ohio Ct. App. Sept. 20, 2013) ........... 18

*Peterson v. Cellco P'ship,*
    164 Cal. App. 4th 1583 (2008) ...................................................................... 14

*Ross v. Creighton Univ.,*
    957 F.2d 410 (7th Cir. 1992) ........................................................................... 7

*Salinas v. Palo Alto Univ.,*
    No. 15-6336, 2017 WL 4237011 (N.D. Cal. Sept. 25, 2017) .......................... 7

*Searle v. Regents of Univ. of Cal.,*
    23 Cal. App. 3d 448 (1972) ........................................................................... 11

*Southwell v. Univ. of Incarnate Word,*
    974 S.W.2d 351 (Tex. Ct. App. 1998) ............................................................. 9

*Spy Optic, Inc. v. Alibaba.Com, Inc.,*
    163 F. Supp. 3d 755 (C.D. Cal. 2015) ............................................................. 6

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

-iv-

UNIVERSITY OF THE PACIFIC'S                    CASE NO. 5:20-CV-03196-EJD
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

*Talbot v. Johnson Newspaper Corp.*,
123 A.D.2d 147 (N.Y. App. Div. 1987) ...................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ...................................................................................................6

*Tubell v. Dade Cty. Public Schs.*,
419 So.2d 388 (Fla. Dist. Ct. App. 1982) ...............................................................7

*Van Buskirk v. CNN*,
284 F.3d 977 (9th Cir. 2002) ...................................................................................6

*Van Hoomissen v. Xerox Corp.*,
368 F. Supp. 829 (N.D. Cal. 1973) ........................................................................21

*Vijay v. Twentieth Century Fox Film Corp.*,
No. 14-5404, 2014 WL 5460585 (C.D. Cal. Oct. 27, 2014)...................................6

*Vu v. Cal. Comm. Club, Inc.*,
58 Cal. App. 4th 229 (1997) ..........................................................................13, 18

*Wong v. Regents of Univ. of Cal.*,
15 Cal. App. 3d 823 (1971) ....................................................................................7

*Wright v. Capella Univ., Inc.*,
378 F. Supp. 3d 760 (D. Minn. 2019) ...................................................................15

*Zinter v. Univ. of Minn.*,
799 N.W.2d 243 (Minn. Ct. App. 2011) ...............................................................15

*Zumbrun v. Univ. of Southern Cal.*,
25 Cal. App. 3d 1 (1972) .........................................................................................9

*Zwiker v. Lake Super. State Univ.*,
Case No. 1:20-cv-21813-JEM, Dkt. No. 35-1 (Mich. Ct.Cl. Sept. 1, 2020) ...........10, 12

**Statutes**

Cal. Civ. Code § 3294 ...........................................................................................21

**Other Authorities**

Andrew DePietro, *Here's A Look At The Impact Of Coronavirus (COVID-19) On
Colleges And Universities In The U.S.*, FORBES (Apr. 23, 2020),
https://www.forbes.com/sites/andrewdepietro/2020/04/30/impact-coronavirus-
covid-19-colleges-universities/#7980713461a6 .....................................................2

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

-v-

Jordan Weissmann, *Why it Makes Sense for Harvard to Keep Charging Full Tuition*, SLATE (July 7, 2020), https://slate.com/business/2020/07/harvard-full-tuition-coronavirus.html ........................................................................................................ 2

Lindsay McKenzie, *COVID-19 & Online Education Decisions*, INSIDE HIGHER ED (July 30, 2020) https://www.insidehighered.com/news/2020/07/30/survey-data-reveal-impact-covid-19-perceptions-online-education ................................................ 20

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

-vi-

UNIVERSITY OF THE PACIFIC'S
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

CASE NO. 5:20-CV-03196-EJD

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant University of the Pacific ("Pacific") is just one in a growing list of universities facing class action lawsuits for making the responsible —and government mandated—decision to suspend in-person instruction in response to the COVID-19 pandemic. The global COVID-19 outbreak has resulted in some variation of stay-at-home orders in every state in the United States, as well as internationally. Education has not been spared, as academic institutions at every level were ordered to shut their campuses and suspend in-person instruction, and many remain unable to resume in-person instruction during the fall 2020 term as COVID-19 continues to affect the country.

Rather than terminate the academic year altogether, which would have imposed severe disruptions and long-term hardships on its students, Pacific responded to the COVID-19 outbreak by undertaking extraordinary efforts to transition to distance learning in March 2020 and complete the remainder of the spring term.[1] Pacific students continued to attend the same classes and receive instruction from the same Pacific faculty. What changed was the *mode of instruction*, a matter squarely within the academic discretion of a university and its faculty. Pacific continued to provide core student services, including access to faculty and administration, academic advising, office hours, mental health support, tutoring, student health services, library services, career services, and other services and activities, and Pacific students ultimately received the academic credits for which they paid tuition and fees. Indeed, Plaintiff does not dispute that he completed his courses and received the appropriate credits. Pacific fulfilled its contractual obligations to deliver the courses and credits for which Plaintiff paid.

Pacific admittedly "did not have a choice in cancelling in-person classes," *see* Dkt. No. 25 ("FAC") ¶ 13, and it was the responsible, lawful thing to do in response to the unprecedented impact of COVID-19. State and local government mandated exactly that action. Pacific could not

---

[1] On March 5, 2020, the U.S. Dept. of Education explicitly approved the implementation of distance learning for the spring 2020 academic semester. *See* Declaration of Kristina S. Azlin ("Azlin Decl.") Ex. B; Pacific's Request For Judicial Notice ("RJN"), No. 11.

UNIVERSITY OF THE PACIFIC'S
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

CASE NO. 5:20-CV-03196-EJD

1   endanger its students, faculty, and staff by maintaining in-person instruction in the face of this

2   health crisis, nor could it reopen its campus in violation of state and local government orders. Nor

3   has the pandemic and related transition to distance learning resulted in a windfall or unjust

4   enrichment for Pacific, as Plaintiff wildly speculates. Although in-person instruction was

5   suspended, Pacific, like other educational institutions, incurred substantial costs in technology to

6   transition successfully to distance learning on top of its fixed operational costs.[2] The decision to go

7   online unquestionably benefitted Pacific's students, employees and community.

8          In the face of these admittedly justified actions and the continuing pandemic placing

9   unprecedented financial challenges on private universities, Plaintiff nonetheless demands judicial

10  second-guessing of Pacific's academic decision-making because online learning was supposedly

11  "subpar." *Id.* at ¶ 31. That demand contravenes California's policy against claims for educational

12  malpractice absent extraordinary circumstances, none of which are present or alleged here.

13         The FAC must be dismissed as it fails to cure the deficiencies in the original pleading:

14  Plaintiff fails to articulate a right to relief under *any* legal theory cognizable in California.

15  Moreover, allowing Plaintiff's claims to go forward will result in problematic policy implications

16  where opportunistic suits are allowed to waste resources of education institutions that acted in

17  compliance with government orders and in the best interest of their students, employees and

18  community. Allowing this action to proceed will set a dangerous precedent that courts can second-

19  guess a university's decision on the manner of instruction, how to comply with government orders,

20  and how to keep its community safe, and speculate about a subjective difference in how a particular

21  student valued a semester of education less than half of which was completed online. For these

22  reasons, as more fully set forth below, Pacific respectfully submits that Plaintiff's FAC should be

23  dismissed with prejudice.

24

25  [2] *See, e.g.,* Jordan Weissmann, *Why it Makes Sense for Harvard to Keep Charging Full Tuition*, SLATE (July 7, 2020), https://slate.com/business/2020/07/harvard-full-tuition-coronavirus.html;

26  Andrew DePietro, *Here's A Look At The Impact Of Coronavirus (COVID-19) On Colleges And Universities In The U.S.*, FORBES (Apr. 23, 2020),

27  https://www.forbes.com/sites/andrewdepietro/2020/04/30/impact-coronavirus-covid-19-colleges-universities/#7980713461a6.

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

-2-

UNIVERSITY OF THE PACIFIC'S                                     CASE NO. 5:20-CV-03196-EJD
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

1

## II.    FACTUAL AND PROCEDURAL BACKGROUND

2

### A.    Pacific's Policies Are Set Forth in the Academic Catalog

3

Pacific is a private institution of higher learning with campuses in Stockton, Sacramento,

4

and San Francisco, California. Every year, Pacific publishes an academic catalog for each campus

5

outlining the university's policies, including the academic calendar, financial information, payment

6

policies, and refund policies. *See generally,* Declaration of Dr. Maria Pallavicini ("Pallavicini

7

Decl.") Exs. A-D (hereinafter, "Pacific Catalogs"); RJN Nos. 1-4.

8

A student's registration, when accepted by Pacific, constitutes a financial agreement

9

between the student and university. *See* Pallavicini Decl. Ex. A at 47 ("Stockton Catalog"); *see also*

10

*id.* at Ex. E ("Financial Agreement"); RJN No. 1; RJN No. 5. The student becomes responsible for

11

all tuition and fees charged at the time they register for courses or receive services. *See id.* Tuition,

12

fees, and other charges incurred by the student are added to a student account, and, for the spring

13

2020 semester, payment in full was due January 1, 2020. Stockton Catalog at 47-48; RJN No. 1.

14

Pacific has a refund policy to support students who withdraw from the university. *Id.* at 48.

15

Students at the Stockton campus, including Plaintiff, can withdraw for a 100% refund prior to the

16

first day of classes. *Id.* A student is not entitled to a refund if the withdrawal occurs after the half-

17

way point of the semester, and fees are non-refundable after the last day to add courses for the

18

semester. *Id.* at 49. For the spring 2020 semester, the deadline to request a full refund of fees was

19

January 24, and the last day for any pro-rated tuition refund was March 5. *Id.* at 417.

20

Pacific's catalogs and the Financial Agreement state clearly and unambiguously that a

21

student must give notice of the intention to withdraw. *Id.* at 48; Financial Agreement at 2. Plaintiff

22

does not allege that he withdrew or gave notice of intent to withdraw at any point during the spring

23

2020 term. *See generally* Dkt. No. 1.

24

### B.    Pacific Responds to the COVID-19 Pandemic

25

On or about January 29, 2020, Pacific began notifying its students of the COVID-19 threat

26

and the precautions the university was taking. *See* Pallavicini Decl. Ex. F; RJN No. 7.

27

Communications about COVID-19 and the university's precautionary measures were sent regularly

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

-3-

1   from Pacific's leadership to students, faculty, administrators, and the wider Pacific community as

2   the crisis grew more acute. Pallavicini Decl. ¶ 10; RJN No. 6.

3          On March 4, 2020, California Governor Gavin Newsom declared a state of emergency

4   arising from the COVID-19 pandemic. Azlin Decl. A; RJN No. 10. In the following weeks, the

5   California Governor, San Joaquin County, and the City of Stockton issued almost daily orders and

6   proclamations in response to COVID-19, which shut down virtually all in-person gatherings and

7   activities across the state and county, including, *inter alia*:

8   •   March 12:  the Governor banned gatherings of more than 250 people, and the City of Stockton

9       declared a local emergency;

10  •   March 13:  the Governor directed the California Department of Education to develop and issue

11      guidance on distance learning in anticipation of campuses shutting down due to COVID-19;

12  •   March 16:  the Governor directed vulnerable populations to stay at home;

13  •   March 17:  San Joaquin County declared a local public health emergency;

14  •   March 19:  the Governor issued a statewide stay-at-home order exempting only essential

15      critical infrastructure workers;

16  •   March 20:  San Joaquin County issued a stay-at-home order; and

17  •   March 24, 2020:  Stockton City Council passed resolution affirming Governor's stay-at-home

18      order.

19  Azlin Decl., Exs. A-J; RJN Nos. 10-19.

20         Pacific monitored not only the state and local orders related to COVID-19, but also reports

21  of the rapid spread of COVID-19. On March 11, Pacific announced that the university would extend

22  spring break from March 13 to March 20, and that classes would transition to distance learning

23  beginning March 23. *See* Dkt. No. 25 ¶ 26. On March 15, Pacific made the decision to close campus

24  housing with limited exceptions. Pallavicini Decl. Ex. G; RJN No. 8. In connection with the

25  unexpected transition to distance learning, Pacific made certain exceptions to allow students to

26  withdraw from classes, but specifically noted to students that withdrawals would not entitle students

27  to refunds of any tuition or fees, as the March 5, 2020 deadline to withdraw with a partial refund

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

-4-

1   had passed. *Id.* Plaintiff did not withdraw from any classes prior to March 5, and instead, completed

2   the full semester remotely. *See* Dkt. No. 25 ¶ 15.

3   **C.   Plaintiff's First Amended Complaint.**

4   Plaintiff Viney Saroya is enrolled at Pacific's campus in Stockton, California, as an

5   undergraduate studying business and economics. Dkt. No. 25 ¶ 15. On May 10, 2020, Plaintiff filed

6   his original Complaint against Pacific. *See* Dkt. No. 1. In response to Pacific's motion to dismiss,

7   *see* Dkt. Nos. 22-23, Plaintiff filed the FAC asserting four causes of action for breach of contract,

8   unjust enrichment, conversion, and money had and received, *see* Dkt. No. 25.

9   As with the original Complaint, the gravamen of the FAC is that Pacific's change in the

10   mode of instruction to obey shelter-in-place orders and protect the health and safety of its

11   community somehow required Pacific to issue *pro rata* tuition and fees refunds based on an

12   unidentified, mystery formula, even though Pacific completed the semester and delivered the

13   academic credits for which Plaintiff paid.

14   Based on this unprecedented and unsupported theory, Plaintiff prays on behalf of himself

15   and others similarly situated, for an order certifying a class action and appointing Plaintiff as class

16   representative; damages in an unspecified amount of tuition and fees refunds; injunctive relief; and

17   costs and attorneys' fees. *See* Dkt. No. 25 at Prayer for Relief.

18   **III.   LEGAL STANDARD**

19   "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

20   accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

21   662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "[f]actual

22   allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S.

23   at 555 (internal quotation marks and alteration omitted). The facts alleged must set forth plaintiff's

24   entitlement to relief under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d

25   696, 699 (9th Cir. 1990). If plaintiff's factual allegations fail to state a claim under a cognizable

26   theory and additional facts would not cure such defect, the claim fails as a matter of law and must

27

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

-5-

be dismissed with prejudice. *Vijay v. Twentieth Century Fox Film Corp.*, No. 14-5404, 2014 WL 5460585, at *2 (C.D. Cal. Oct. 27, 2014).

When ruling on a 12(b)(6) motion, a court may look beyond the pleadings "at documents incorporated by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Under the incorporation by reference doctrine, a court may consider a document relied upon in a complaint where its authenticity is uncontested. *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002). This includes when plaintiff's claim depends on the content of a document even though the plaintiff does not explicitly allege its contents. *LSSC LLC v. Wilco Life Ins. Co.*, No. 19-1854, 2019 WL 4570026, at *2 (C.D. Cal. Aug. 14, 2019). For example, materials published on a defendant's website where the contents of the website are alleged in the complaint or necessarily relied on by the complaint, and where the website's authenticity and relevance is uncontested, may be considered on a Rule 12(b)(6) motion. *Spy Optic, Inc. v. Alibaba.Com, Inc.*, 163 F. Supp. 3d 755, 762-63 (C.D. Cal. 2015). Pacific's website and documents posted to the website, including Pacific's Catalogs, are incorporated in the Complaint based on Plaintiff's reliance on and the uncontested nature of Pacific's website.

## IV.   ARGUMENT

### A.   Plaintiff's Claims Are Fundamentally Demands For Judicial Intervention In Academic Decisions Regarding Mode Of Instruction, Which Are Not Actionable.

The FAC does not change the fact that all of Plaintiff's claims are substantively demands for judicial review of Pacific's decision to change its mode of academic instruction during a pandemic and government-ordered shutdown, based on inactionable assertions that distance learning was allegedly "subpar" and "in no way the equivalent of the in-person education putative class members contracted and paid for." Dkt. No. 25 ¶¶ 31-32. This claim for "educational malpractice" is not supported by the law or the facts.

California courts do not intervene in the academic affairs of schools absent "such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Banks v. Dominican Coll.*, 35 Cal.

App. 4th 1545, 1551 (1995); *see also Paulsen v. Golden Gate Uni.*, 25 Cal. 3d 803, 808 (1979). The exception for a lack of professional judgment is a high bar: courts will overturn a university's academic decision *only if* it is arbitrary and capricious, not based upon academic criteria, and the result of irrelevant or discriminatory factors. *Paulsen*, 25 Cal. 3d at 808-09; *accord Wong v. Regents of Univ. of Cal.*, 15 Cal. App. 3d 823, 830 (1971). So long as the university has a rational basis for its decision, that decision must stand. *Salinas v. Palo Alto Univ.*, No. 15-6336, 2017 WL 4237011, at * 9 (N.D. Cal. Sept. 25, 2017).[3]

The policy of not entertaining such claims is sound. First, there is no satisfactory standard of care by which to evaluate academic decision-making, as "theories of education are not uniform, and different but acceptable scientific methods of academic training make it unfeasible to formulate a standard by which to judge the conduct of those delivering the services." *Ross v. Creighton Univ.*, 957 F.2d 410, 414 (7th Cir. 1992). The difficulty in determining a uniform standard of care is particularly acute now, when schools have had to reinvent their mode and methods of instruction virtually overnight in response to COVID-19 and government orders. Second, there are "inherent uncertainties . . . about the cause and nature of damages." *Id.* As further detailed below, the subjective "value" of distance learning to each student is unique, especially in a global pandemic, and early reports indicate that some students in fact thrive in remote learning. *See* Sections IV.B.3 and IV.E., *infra*. Third, the "potential . . . for a flood of litigation against schools," *Ross*, 957 F.2d at 414, is high, as is clear by the fact that over 200 actions have been filed against universities and colleges arising from COVID-19 related transitions to distance learning. Fourth, the risk of enmeshing courts in the day-to-day oversight of academic operations is "particularly troubling in the university setting where it necessarily implicates considerations of academic freedom and autonomy." *Id.* at 415. This highly deferential standard merits dismissal of this entire action as a matter of law.

---

[3] The principle of judicial deference to academic decision-making is well established nationally, as courts routinely dismiss complaints like this one sounding in "educational malpractice." *See Paulsen*, 25 Cal. 3d at 808 ("There is a widely accepted rule of judicial non-intervention into the academic affairs of schools.") (citing cases from multiple jurisdictions); *Tubell v. Dade Cty. Public Schs.*, 419 So.2d 388 (Fla. Dist. Ct. App. 1982) (citing cases across jurisdictions).

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

-7-

UNIVERSITY OF THE PACIFIC'S
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

CASE NO. 5:20-CV-03196-EJD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

Plaintiff does not, and cannot, assert that he was denied access to an education or that he did not receive credits for courses completed. Nor does Plaintiff allege that Pacific failed to exercise its professional judgment. To the contrary, Plaintiff challenges Pacific's professional judgment regarding the mode of instruction by asserting—with no support whatsoever—that *the quality* of his online instruction was inferior to in-person instruction. *See* Dkt. No. 25 ¶¶ 10, 31-32. Plaintiff is explicit that the injury allegedly sustained derives from the *quality* of remote education, and thus allowing his claims to go forward would necessarily require the Court analyze the quality and value of Pacific's remote instruction as subjectively experienced by each student and second-guess the professional judgment of Pacific's administration, faculty, and staff to suspend in-person instruction in response to a global health crisis that continues to ravage the country. That is precisely the type of inquiry into academic decision-making in which California courts do not engage.

Nor can Plaintiff establish that Pacific failed to exercise professional judgment. Pacific's decision was not arbitrary or capricious as a matter of law because it was a reasonable response to emergency conditions and government orders. Indeed, Plaintiff concedes that the decision to transition to distance learning was out of Pacific's control, *see* Dkt. No. 25 ¶ 13, caused by the pandemic and government-imposed restrictions, *see id.* at ¶ 1. The Governor of California implemented a state-wide stay-at-home order less than a week after Pacific closed its campus. Pacific's compliance with the law cannot be arbitrary or capricious. Nor can suspension of in-person instruction in response to COVID-19 be considered a "departure from accepted academic norms," *see Banks*, 35 Cal. App. 4th at 1551, as virtually every school at every level across the country implemented the same measures to protect students, faculty, and staff during the pandemic, and where Pacific's accrediting agency approved the online transition. *See* Azlin Decl., Ex. B; RJN No. 11

Further, Pacific's decision to not issue *pro rata* tuition or fees refunds cannot be arbitrary or capricious because the decision aligns with Pacific's published refund policies and budgeted costs. *See Paulsen*, 25 Cal. 3d at 809-11 (university's compliance with its policies was not arbitrary or capricious); Pacific Catalog at 48. Pacific's refund policy makes clear that students are only eligible

UNIVERSITY OF THE PACIFIC'S
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

CASE NO. 5:20-CV-03196-EJD

1    for tuition refunds if they withdraw from classes, and that the last day to withdraw and request any

2    partial refund for the spring 2020 semester was March 5. *See* Financial Agreement at 2; Pacific

3    Catalog at 48, 417. Plaintiff does not allege that he withdrew from classes at any point during the

4    spring 2020 semester, but rather concedes he completed all courses online. *See generally* Dkt. No.

5    25. There can be no dispute that Plaintiff did not qualify for any refund of tuition or fees under the

6    express terms of Pacific's refund policy. Thus, Plaintiff's Complaint, all of which constitutes an

7    impermissible claim for educational malpractice, must be dismissed in its entirety with prejudice.

8       **B.      Plaintiff's Claim For Breach Of Contract Fails As A Matter Of Law.**

9              1.      Plaintiff Fails To Identify Any Enforceable Promise That Was Breached.

10          The relationship between a student and university is contractual in nature. *Kashmiri v.*

11   *Regents of Univ. of Cal.*, 156 Cal. App. 4th 809, 824 (2007), *as modified* (Nov. 15, 2007), *review*

12   *denied* (Jan. 23, 2008). The basic bargained-for exchange is that the university will provide a

13   curriculum and instruction necessary for the student to achieve a degree, and will confer a degree in

14   exchange for the student's payment of tuition and completion of degree requirements. *Paulsen*, 25

15   Cal. 3d at 808; *see also Southwell v. Univ. of Incarnate Word*, 974 S.W.2d 351, 356 (Tex. Ct. App.

16   1998); *Talbot v. Johnson Newspaper Corp.*, 123 A.D.2d 147, 149 (N.Y. App. Div. 1987).

17          Additional terms to the agreement between university and student may be found in, *inter*

18   *alia*, the university's policies, bulletins, brochures, and other publications. *Kashmiri*, 156 Cal. App.

19   4th at 824; *see also Zumbrun v. Univ. of Southern Cal.*, 25 Cal. App. 3d 1, 10 (1972). Critically,

20   however, not every statement in a university's publications amounts to a contractual term,

21   *Kashmiri*, 156 Cal. App. 4th at 828, with courts unwilling to apply contract law to *general* promises

22   or expectations. *Id.* at 826. Instead, in interpreting the enforceable terms of the agreement, the court

23   looks to the reasonable expectation of the student at the time of contracting, "measured by the

24   definiteness, specificity, or explicit nature of the representation at issue." *Id.* at 832.

25          The level of specificity required to sustain a breach of contract claim against a university is

26   a high bar. This comports with courts' deference to university decision-making and policies, and

27   furthers the widely accepted rule of judicial nonintervention into the academic affairs of schools.

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

-9-

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

1  For example, in *Kashmiri*, a specific promise was found in the university's catalogues and website

2  which explicitly stated increases to a certain fee would "apply to new students only" and that the fee

3  "[would] remain the same for each student for the duration of his or her enrollment in the

4  professional degree program." 156 Cal. App. 4th at 833. The *Kashmiri* court relied on the

5  university's decision to highlight the express promise not to raise fees for a specified category of

6  students, distinguishing such specificity from general tuition disclosures which are subject to the

7  university's right to change its tuition, and thus do not constitute specific promises. *Id.* at 832; *see*

8  *also id.* at 826 (citing examples of specific promises sufficient to sustain breach of contract claims).

9       The Michigan Court of Claims' recently filed decision in *Zwiker v. Lake Super. State Univ.*,

10  Case No. 1:20-cv-21813-JEM, Dkt. No. 35-1 (Mich. Ct.Cl. Sept. 1, 2020), another COVID-19

11  tuition refund case, is particularly instructive. As in *Zwiker*, Pacific and its students enter into the

12  Financial Agreement, which contains *Plaintiff's* specific promise to pay tuition and fees upon

13  registration or receipt of services:

14       I acknowledge that when I register for any courses with the University of the Pacific
         or receive services or purchase goods, I am responsible for all "charges" as they are
15       posted to my account but are not limited to tuition, fees, room and board, meal
         plans, Laptop Agreement, bookstore charges and library fees. I further understand
16       and agree that my registration and acceptance of these terms constitutes a
         promissory note agreement (i.e., a financial obligation in the form of an educational
17       loan as defined by the U.S. Bankruptcy Code at 11 U.S.C. § 523 (a) (8) in which the
         University of the Pacific is providing me educational services, deferring some
18       or all of my payment obligation for those services, and I promise to pay for all
         assessed tuition, fees, and other associated costs by the published or assigned due
19       date.

20

21  Financial Agreement at 1. In exchange for the student's payment of tuition and fees, Pacific agrees

22  to confer certain benefits, including "course registration, grades and diplomas." *Id.* The student

23  further acknowledges and agrees to be bound by Pacific's refund policy. *Id.* at 2. Nowhere in the

24  Financial Agreement—the express agreement defining Plaintiff's obligations concerning tuition and

25  fees—is there any promise that Pacific would guarantee in-person instruction in the middle of a

26  pandemic and despite government stay-at-home orders. *See generally, id.*; *see also Zwiker*, Case

27  No. 1:20-cv-21813-JEM, Dkt. No. 35-1 at 9 ("[A] claim for a breach of contract cannot be

28

-10-

UNIVERSITY OF THE PACIFIC'S                                    CASE NO. 5:20-CV-03196-EJD
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

1    sustained where the language purportedly breached does not appear in the parties' agreement.").

2    And, Plaintiff does not dispute that Pacific did in fact provide course registration and grades (and a

3    diploma if Plaintiff satisfies all requirements) in exchange for tuition and fees.

4    Even if the Financial Agreement did not apply to dispose of Plaintiff's claims, Plaintiff's

5    breach of contract claim still fails as Plaintiff fails to identify any specific promise that Pacific

6    would (i) provide in-person instruction and access to campus even in the midst of a global health

7    crisis or government-ordered restrictions; or (ii) issue tuition and fees refunds other than as

8    provided for in its published refund policy. *See generally* Dkt. No. 25. Plaintiff's FAC does not cure

9    this pleading deficiency, but merely asserts in conclusory fashion that the Pacific course catalogs

10   "provided information regarding the courses offered" and the catalogs "indicated classes would be

11   administered in an in-person, on-campus setting." *See id.* at ¶¶ 48, 50. Plaintiff does not and cannot

12   assert that Pacific's Catalog make any promise that the location or format of classes would

13   *exclusively* be in-person and on-campus, irrespective of whether it is safe or legal to do so.

14   Indeed, Pacific's Catalog expressly contemplates that the university administration may

15   need to modify its course offerings, including the mode of instruction, to respond to emergencies.

16   Pacific's Catalog clearly and unambiguously "reserve[] the right to change fees, *modify its services*

17   *or changes its programs at any time and without prior notice being given.*" *See, e.g.,* Stockton

18   Catalog at 3. This reservation of rights defeats Plaintiff's breach of contract claim as a matter of

19   law. *See, e.g., Searle v. Regents of Univ. of Cal.*, 23 Cal. App. 3d 448, 452 (1972) (recognizing

20   university's discretion to change policy); *Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342-43

21   (Fla. 4th Dist. Ct. App. 2008) (university not liable for changing policies where handbook reserved

22   right to "revise or modify" policies "at any time"); *Beukas v. Bd. of Trs. of Farleigh Dickinson*

23   *Univ.*, 605 A.2d 708, 708-09 (N.J. Super. Ct. 1992) (reservation of right to eliminate any college

24   within university subject to giving adequate notification precluded contract claim).

25

26

27

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

-11-

UNIVERSITY OF THE PACIFIC'S
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

CASE NO. 5:20-CV-03196-EJD

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

2.  <u>Pacific's Policies Include A Financial Agreement And Refund Policy, Which
Do Not Entitle Plaintiff To Any Partial Refunds.</u>

Pacific's Catalog further makes explicit that a student's registration for classes creates a

financial agreement between student and school:

> Registration, when accepted by the [Pacific], constitutes a financial agreement
> between the student and the University. . . . Tuition, fees and other charges the
> student incurs including but not limited to, housing, meal plans, and bookstore
> charges are added to the student account and are considered a loan for an
> educational benefit.

Stockton Catalog at 47. Under the terms of this financial agreement, payment of tuition and fees

was due in full by January 1, 2020. *Id.* at 417.

With respect to refunds of student tuition and fees, the express and unambiguous terms of

Pacific's refund policy govern:

> **Refund of Tuition and Fees**
> The following refund schedule pertains only to tuition charges and is applicable
> when the student drops below full time enrollment or officially withdraws from the
> University. Students who intend to withdraw must notify the Office of the
> Registrar.
>
> Refunds are based upon a percentage of calendar days. Calendar days of a semester
> may vary from semester to semester. For exact dates, please refer to the Student
> Accounts website or contact their office.
>
> Notification and withdrawal before classes begin – No charge.
>
> First day of classes until last day to add – $150 clerical charge.
>
> After 50% of calendar days no refund, 100% penalty.
>
> Fees are non-refundable after the last day to add courses for the semester.

*Id.* at 48-49. For the spring 2020 term, the last day to withdraw and request a refund was March 5,

2020. *Id.* at 417. Although in-person instruction was suspended, Pacific continued to accrue

operating expenses, including significant expenses related to the transition to distance learning. The

refund policy accommodates this reality and, as noted in the Stockton Catalog, tuition and fees do

not even cover all of Pacific's operating expenses. *See id.* at 46.

UNIVERSITY OF THE PACIFIC'S
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

CASE NO. 5:20-CV-03196-EJD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

Plaintiff has no basis to claim a refund. He does not allege that he dropped below full-time enrollment or that he withdrew from the university. Nor does he allege alerting Pacific of his intent to withdraw. Therefore, as a matter of law, Plaintiff did not qualify for any tuition or fees refund under the terms of Pacific's policies. And, nowhere in any of Pacific's course catalogs is there a provision entitling students to tuition or fees refunds in the event that Pacific is forced to alter the manner of instruction due to health emergency or government orders. The absence of such provisions is dispositive of Plaintiff's claims.

        3.   <u>Pacific Did Not Cause Damages to Plaintiff.</u>

Even if Plaintiff had identified a specific promise that obligated Pacific to provide in-person instruction and access, his breach of contract claim still fails because *damages resulting from the alleged breach* is an essential element of a claim for breach of contract in California and (i) Plaintiff cannot plead that he has been "damaged" without asking this Court to value the quality of the education received, an inquiry that is impermissibly speculative and also prohibited by the doctrine of educational malpractice and deference to educational decision making (as set forth above); and (ii) even if the Court were to entertain such a damage-theory, Plaintiff must plead that it was the *defendant's* action that caused such damages. *Vu v. Cal. Comm. Club, Inc.*, 58 Cal. App. 4th 229, 233-34 (1997) ("Causation of damages in contract cases, as in tort cases, requires that the damages be proximately caused by the defendant's breach, and that their causal occurrence be at least reasonably certain.") (citing Cal. Civ. Code §§ 3300-3301). No breach of contract claim lies where the independent act of a third party or intervening factors prevents the defendant from fully complying with or performing the terms of the subject agreement. *See id.* (no causal connection between defendant's alleged failure to provide adequate security to protect from cheating and plaintiffs' losing card games over two weeks where losses were "inherently the product of other factors, namely individual skill and fortune or luck").

Here, Plaintiff concedes that the suspension of in-person instruction and the alleged harm it caused was out of Pacific's control. *See* Dkt. No. 25 ¶ 13. There is no dispute that Plaintiff's alleged harm was the result of COVID-19 and government orders. In light of these admissions, Plaintiff

-13-

1   cannot establish that Pacific's actions caused the alleged harm for which he seeks contract damages,

2   and, consequently, the contract claims fail as a matter of law.

3       **C.    Plaintiff's Claim For Unjust Enrichment Or Quasi-Contract Fails As A Matter**
         **Of Law.**
4

5           1.    Plaintiff's Restitution Claim Fails.

6           Under the law of restitution, "[a]n individual is required to make restitution if he or she is

7   unjustly enriched at the expense of another." *First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657,

8   1662 (1992). However, "[t]he fact that one person benefits another is not, by itself, sufficient to

9   require restitution. The person receiving the benefit is required to make restitution only if the

10  circumstances are such that, as between the two individuals, it is unjust for the person to retain it."

11  *Id*. at 1663.

12          A claim for restitution "does not lie" where, as here, an "'enforceable, binding agreement

13  exists defining the rights of the parties.'" *Gonzales Commc'ns, Inc. v. Titan Wireless, Inc.*, No. 04-

14  cv-147, 2007 WL 1994057, at *3 (S.D. Cal. Apr. 18, 2007) (quoting *Paracor Fin., Inc. v. Gen.*

15  *Elec. Capital Corp*., 96 F.3d 1151, 1167 (9th Cir. 1996)). An enforceable agreement precludes a

16  restitution claim because "there is no equitable reason for invoking restitution when the plaintiff

17  gets the exchange which he expected." *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593

18  (2008). "While generally parties are permitted to plead in the alternative, the allegation of binding

19  contracts nullifies the unjust enrichment claim." *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th

20  1342, 1388 (2012).

21          There are two limited exceptions in which restitution may be awarded under an unjust

22  enrichment theory in lieu of breach of contract damages: (1) "when the parties had an express

23  contract, but it was procured by fraud or is unenforceable or ineffective" or (2) "where the

24  defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct," but

25  the plaintiff has chosen not to sue in tort, seeking restitution on a quasi-contract theory instead.

26  *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) (citations omitted). Neither

27  exception applies here. Plaintiff has not pled and cannot plead that Pacific obtained his tuition and

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

-14-

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

fee payments by fraud, duress or similar conduct,[4] nor are there any facts suggesting that the express refund policy published in the Pacific's Catalog is unenforceable or ineffective.

Plaintiff agreed to be bound by Pacific's refund policy when enrolling, which specified that tuition and fee refunds are available only if he withdrew before March 5, 2020. Given the express and unambiguous terms of the refund policy, Plaintiff had no reasonable expectation of a refund.

Further, as a matter of policy upholding academic discretion, courts across the country are reluctant to allow unjust enrichment claims seeking tuition refunds from universities where, as here, there is no dispute that the school completed instruction for credit in exchange for tuition. *See, e.g., Miller v. Loyola Univ. of New Orleans*, 829 So.2d 1057, 1061-62 (Lou. Ct. App. 2002) (dismissing unjust enrichment claim where student received instruction for credit in exchange for tuition despite claims that instruction was unsatisfactory); *Gokool v. Okla. City Univ.*, 716 F. App'x 815, 819 (10th Cir. 2017) (affirming 12(b)(6) dismissal of unjust enrichment claim where student sought refund of first-year tuition payments after being dismissed at end of first academic year); *McCabe v. Marywood Univ.*, 166 A.3d 1257, 1264 (Pa. Super. Ct. 2017) (dismissing unjust enrichment in tuition refund claim where student lost credits after transferring schools); *Wright v. Capella Univ., Inc.*, 378 F. Supp. 3d 760, 775 (D. Minn. 2019) (dismissing unjust enrichment claim in tuition refund case where plaintiff received instruction in exchange for tuition, school did not guarantee a degree, and there was no allegation of illegality or unlawfulness in school retaining tuition); *Zinter v. Univ. of Minn.*, 799 N.W.2d 243, 247 (Minn. Ct. App. 2011) (dismissing unjust enrichment claim in tuition refund case where plaintiff was admitted to courses for which she paid tuition). To rule otherwise would directly undermine Pacific's academic discretion and would violate the Court's policy of deferring to university decision makers on matters of academic standards.

### 2.   Plaintiff's Claim for Money Had and Received Fails.

Plaintiff's money had and received count merely asserts an alternative claim seeking the same recovery demanded in the breach of contract claim. *McBride v. Boughton*, 123 Cal.App.4th

---

[4] Plaintiff's claim for unjust enrichment, to the extent based on conversion, fails for the reasons discussed in Section IV.B, *infra*.

-15-

1   379, 394 (2004). Because the breach of contract claim is "demurrable," the common count based on

2   it is also demurrable. *Id.* Plaintiff's common count is based on the same facts as his contract claim,

3   and therefore falls with his contract claim, for the reasons analyzed above.

4          Moreover, Plaintiff cannot establish the elements of cause of action for money had and

5   received, which is "stated if it is alleged the defendant is indebted to the plaintiff in a certain sum

6   for money had and received by the defendant for the use of the plaintiff." *Farmers Ins. Exch. v.*

7   *Zerin*, 53 Cal. App. 4th 445, 460 (1997) (internal quotation omitted). Plaintiff must allege

8   specifically "(1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods

9   sold, work done, etc., and (3) nonpayment." *Id.* Here, Plaintiff has not properly pleaded a claim for

10   money had and received because he does not allege that Pacific possesses a sum certain owed to

11   him, nor was there nonpayment of any demand. For these reasons, this common count must be

12   dismissed as a matter of law.

### D.    Plaintiff's Conversion Claim Fails As A Matter Of Law.

14          Plaintiff's conversion claim fails for three independent reasons: (1) the claim is barred by

15   the economic loss rule; (2) a claim for overcharge cannot be brought as a conversion claim, and (3)

16   Plaintiff fails to allege facts establishing the essential elements of an actionable conversion.

17          1.    The Economic Loss Rule Bars Plaintiff's Conversion Claim.

18          California follows the economic loss rule, which prohibits plaintiffs from pursing tort claims

19   "where the alleged damages are the same economic losses arising from [an] alleged breach of

20   contract." *Advanced Riggers & Millwrights, LLC v. Hoist Liftruck MFG, Inc.*, No. 15-1400, 2015

21   WL 12860470, at *7 (C.D. Cal. Oct. 29, 2015) (internal quotations and citations omitted). Instead,

22   "[c]onduct amounting to a breach of contract becomes tortious only when it *also* violates an

23   independent duty arising from principles of tort law." *Id.* (quoting *Erlich v. Menezes*, 21 Cal. 4th

24   543, 551 (1999)) (emphasis added).

25          No such violation of "an independent duty arising from principles of tort law" is at issue

26   here. Instead, like in *Advanced Riggers*, Plaintiff asserts that Pacific both breached its contract and

27   converted Plaintiff's tuition payments *based on identical facts—i.e.*, failing to issue partial refunds

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

-16-

1    after transitioning to remote learning in response to COVID-19. *Compare* Dkt. No. 25 at Count I

2    *with id.* at Count III. Plaintiff also seeks identical damages under both claims—namely, a partial

3    refund of tuition and fees. *Compare id.* at ¶ 55 *with id.* at ¶ 70. Plaintiff's conversion claim is

4    therefore barred by the economic loss rule.

5                    1.      No Claim For Conversion Can Arise From Alleged Overcharges.

6            The crux of Plaintiff's claim for a refund is that Pacific overcharged Plaintiff tuition, fees,

7    and housing costs for the spring 2020 semester because the semester was transferred to online

8    instruction. *See generally,* Dkt. No. 25. Overcharging cannot serve as the basis for a conversion

9    claim. *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1491 (2006); *see also Evans v. BBG*

10   *Commc'ns., Inc.*, No. 10-0542, 2010 WL 11508738, at *3 (S.D. Cal. June 18, 2010) (dismissing

11   conversion claim asserting that defendant overcharged payphone rates).

12                   2.      Plaintiff Fails To Allege Facts Establishing The Elements Of Conversion.

13           Conversion claims require pleading facts that establish: (i) ownership or right to possession

14   of the specific property at issue at the time of the conversion; (ii) defendant's conversion by a

15   wrongful act or disposition of Plaintiff's property rights as to that property; and (iii) damages

16   caused by the conversion. *Oakdale Vill. Grp. v. Fong*, 43 Cal. App. 4th 539, 543–544 (1996).

17   Plaintiff is required to to plead facts establishing *each* of these essential elements, but fails to

18   sufficiently plead *any* such facts.

19           First, "the law is well settled that there can be no conversion where an owner either

20   expressly or impliedly assents to or ratifies the taking, use or disposition of his property." *Bank of*

21   *N.Y. v. Fremont Gen. Corp.*, 523 F.3d 902, 914 (9th Cir. 2008). A property owner's assent to the

22   taking, use, or disposition of their property may be inferred from conduct. *See id.* (discussing bank's

23   approval of transfers as assent, and relying on *Farrington v. A. Teichert & Son, Inc.*, 59 Cal. App.

24   2d 468 (1943)). Here, Plaintiff assented to payment of tuition and fees when he enrolled at Pacific,

25   agreed to be bound by the Financial Agreement between himself and Pacific, and agreed to be

26   bound by Pacific's policies, including the published refund policy.

27

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

-17-

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

Second, Plaintiff cannot establish that Pacific committed an independently wrongful act by retaining the full amount of tuition and fees paid in accordance with its published refund policy. The refund policy expressly permitted Pacific to retain 100% of tuition and fees if a student did not submit written notice of an intent to withdraw by the mid-way point of the semester. Plaintiff gave no such notice. Consequently, Pacific had a lawful right to retain the full payments.

In an analogous case from the Court of Appeals of Ohio—analyzing conversion claims under state law similar to California's[5]—students sought tuition refunds from a defunct medical school. In overturning the jury verdict in favor of the students, the Court of Appeals of Ohio held that "no conversion of property can occur without some kind of 'wrongful act,'" and that "[a] lawful act [of students paying tuition] is not suddenly made wrongful simply because the school runs out of money and closes its doors." *Pepin v. Hansing*, No. 13CA3552, 2013 WL 5433354, at *4 (Ohio Ct. App. Sept. 20, 2013). The same principle applies here. Receiving tuition from students in exchange for providing instruction and academic credits is not wrongful. Nor is it wrongful for a university to retain those tuition payments in accordance with an express policy when the university continues to provide instruction despite the "severe impact" of a pandemic.

Third, Plaintiff fails to plead a "specific, identifiable sum" of damages owed. *Vu*, 58 Cal. App. 4th at 231 (claim that defendant converted "approximately $1.4 million" and "approximately $120,000" insufficient as a matter of law). Plaintiff makes no attempt to identify a specific amount of tuition, board, or fees purportedly converted. *See generally* Dkt. No. 1 ¶¶ 49-56. Indeed, as discussed above, it is a mystery, and total speculation, as to how the court could reasonably assess the alleged loss in "value" of education to Plaintiff caused by a mid-semester transition to remote instruction. For each of the reasons provided above, the conversion claim fails as a matter of law.

---

[5] *See Jurisearch Holdings, LLC v. Lawriter, LLC*, No. 08–03068, 2009 WL 10670588, at *3 (C.D. Cal. Apr. 13, 2009) (acknowledging that California and Ohio conversion laws are similar).

-18-

UNIVERSITY OF THE PACIFIC'S                                    CASE NO. 5:20-CV-03196-EJD
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

E.      **Plaintiff's Demands For Speculative Damages Warrants Dismissal of All Causes of Action.**

Plaintiff's claims, each of which demands partial refunds of tuition and fees based on a purported difference in the value of distance learning and the services provided must be dismissed because Plaintiff's damages are speculative. *Holly v. Alta Newport Hosp., Inc.*, -- F. Supp. 3d --, 2020 WL 1853308, at *5-6 (C.D. Cal. Apr. 10, 2020) (dismissing each cause of action requiring damages as element of claim where plaintiff's claimed damages were conclusory and speculative).

Plaintiff's alleged harm—*i.e.*, purportedly "subpar" online learning options, *see* Dkt. No. 25 ¶ 10—is impermissibly speculative and insufficient as to each of Plaintiff's causes of action. Indeed, courts across the country have recognized that damages arising from claimed deficiencies in the value of education are speculative and thus insufficient as a matter of law to support claims against educational institutions. *See, e.g., Gomez-Jimenez v. N.Y. Law Sch.*, 36 Misc. 3d 230, 248-252 (N.Y. Sup. Ct. 2012) (dismissing deceptive acts and practices claim seeking tuition refund because damages based on "true value" of law degree were speculative); *Mihalakis v. Cabrini Med. Ctr. (CMC)*, 151 A.D.2d 345 (N.Y. App. Div. 1989) (damages measured by difference in value of internship program as marketed versus actual value was speculative); *Hunter v. Bd. of Ed. of Mont. Cnty.*, 439 A.2d 582, 584-85 (Md. 1982) (dismissing claims concerning quality of education due to "the inherent uncertainty in determining the cause and nature of any damages"); *Alsides v. Brown Inst. Ltd.*, 592 N.W.2d 468, 472 (Minn. App. 1999) (dismissing education malpractice claims due to "inherent uncertainties about causation and the nature of damages").

The New York Supreme Court's analysis in *Gomez-Jimenez* is particularly instructive. In *Gomez*, as here, plaintiff disputed *the value* of the instruction received. *See Gomez-Jimenez*, 36 Misc. 3d at 250. In holding that damages based on the perceived value of education are impermissibly speculative, the Court explained as follows:

> To measure damages based on the difference in value between a degree which guarantees a good legal job, as defined by plaintiffs, and one that does not, against the background of the remote, supervening impact of the Great Recession, would require the court to engage in naked speculation. This the court cannot do.

-19-

UNIVERSITY OF THE PACIFIC'S
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

CASE NO. 5:20-CV-03196-EJD

*Id.* at 252. Here too, COVID-19 and its impact on Pacific (and the world) render any attempt to measure damages based on the purported difference in value between remote learning under COVID-19 conditions and in-person instruction in normal times nothing more than fruitless speculation. The circumstances are indisputably exceptional, and the impact varies dramatically among students. Indeed, for many, remote learning may be *more valuable*, especially during a health and safety emergency.[6] Consequently, there is no baseline or delta "value" from which to conduct any useful or fair comparison, making any alleged damages speculative, at best. Such an alleged "injury" cannot satisfy Plaintiff's burden of pleading non-speculaive damages.

Further, each of Plaintiff's claims, to the extent premised on unidentified categories of fees, as to which no facts are alleged, must be dismissed for failing to meet the pleading standards set forth in *Iqbal* and *Twombly*. *See Kabir v. Flagstar Bank, FSB*, No. 16-0360, 2016 WL 10999326, at *4 (C.D. Cal. May 11, 2016) (plaintiffs cannot rely on unspecific claims to survive a motion to dismiss, as *Iqbal* and *Twombly* prohibit fishing expeditions).

### F.   None Of Plaintiff's Claims Entitle Plaintiff To An Award Of Punitive Damages.

A plaintiff cannot establish his entitlement to punitive damages with mere conclusory allegations. *See Brousseau v. Jarrett*, 73 Cal. App. 3d 864, 872 (1977). A complaint containing a demand or prayer for punitive damages must contain a specific statement of facts, which show on their face that the acts or omissions of a defendant were done willfully, maliciously, oppressively or fraudulently. *See McDonnell v. Am. Tr. Co.*, 130 Cal. App. 2d 296 (1955).

Here, the Complaint's *only* reference to punitive damages is contained in the Prayer for Relief. Dkt. No. 25, Prayer for Relief at 15:17. No facts are alleged – conclusory or otherwise – to support an award of punitive damages. *See generally id.*

---

[6] *See, e.g.*, Lindsay McKenzie, *COVID-19 & Online Education Decisions*, INSIDE HIGHER ED (July 30, 2020) https://www.insidehighered.com/news/2020/07/30/survey-data-reveal-impact-covid-19-perceptions-online-education ("The Public Viewpoint: COVID-19 Work and Education survey found that Americans' perceptions of the quality and value of in-person, online or hybrid education vary widely. *The majority of respondents, 35 percent, felt that online education offered the best value for money.*") (emphasis added).

-20-

UNIVERSITY OF THE PACIFIC'S
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

CASE NO. 5:20-CV-03196-EJD

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

Nor can Plaintiff amend to cure his deficient pleading. Punitive damages are disfavored in California and federal courts alike. *See Henderson v. Sec. Nat'l Bank*, 72 Cal. App. 3d 764, 771 (1977) (punitive damages are "never awarded as a matter of right" and "are not favored by the law and should be granted with the greatest of caution") (citations omitted). To recover punitive damages, Plaintiff must plead (and ultimately prove by clear and convincing evidence) facts demonstrating "oppression, fraud, or malice" by the Defendants. *Hilliard v. A.H. Robins Co.*, 148 Cal. App. 3d 374, 391-392 n.8 (1983); *see also* Cal. Civ. Code § 3294. In other words, punitive damages are only proper where a defendant acts "with the intent to vex, injure, or annoy, or with a conscious disregard of the plaintiff's rights" that rises to "a level which decent citizens should not have to tolerate." *Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co.*, 185 Cal. App. 3d 1149, 1154 (1986).

Plaintiff does not and cannot meet that high standard.  There are no set of facts involving Pacific's decision to complete the spring 2020 semester online in the face of a pandemic and government shut-down orders that could possibly rise to the required level of "oppression, fraud, or malice." As a matter of law, Plaintiff cannot recover punitive damages for his breach of contract and unjust enrichment claims. The black letter law of California is that one can never recover exemplary or punitive damages for breach of an obligation arising under contract. Cal. Civ. Code § 3294; *see also Major v. W. Home Ins. Co.*, 87 Cal. Rptr. 3d 556, 579 (Ct. App. 2009) ("[P]unitive damages are not authorized in contract actions under California law."). The only damages recoverable for breach of contract are general damages (direct damages) and special damages (consequential damages). *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 968 (2004). Plaintiff's claims, regardless of how they are characterized, are governed by the contractual relationship between Plaintiff and Pacific, as embodied by, *inter alia*, the Financial Agreement and Stockton Catalog and, therefore, cannot support an award of punitive damages.

Punitive damages are likewise unavailable in actions "in equity." *Van Hoomissen v. Xerox Corp.*, 368 F. Supp. 829, 836 n.5 (N.D. Cal. 1973). Unjust enrichment is an equitable claim which

-21-

1   sounds in implied or quasi-contract. *See Paracor*, 96 F.3d at 1167. Accordingly, Plaintiff cannot

2   recover punitive damages in connection with his defective unjust enrichment claim.

3   　　　　Finally, Plaintiff cannot recover punitive damages as to his conversion claim because his

4   conversion claim fails as a matter of law and matter of pleading. As discussed, *supra*, Plaintiff's

5   conversion claim is barred for the following reasons: the economic loss rule bars such a claim,

6   overcharging cannot be brought as a conversion claim, and Plaintiff fails to allege facts establishing

7   the essential elements of an actionable conversion claim. For these reasons, any prayer for punitive

8   damages in relation to the conversion claim fails.

9   　　　　Accordingly, Plaintiff's demand for punitive damages must be dismissed.

10  **V.**　　**CONCLUSION**

11  　　　　For all of the reasons detailed herein, Pacific respectfully requests an order dismissing

12  Plaintiff's Complaint in its entirety, with prejudice.

13

14  DATED: October 7, 2020　　　　　　　Respectfully submitted,

15  　　　　　　　　　　　　　　　　　HOLLAND & KNIGHT LLP

16

17  　　　　　　　　　　　　　By:*/s/ Vito A. Costanzo*
　　　　　　　　　　　　　　　　　Vito A. Costanzo

18  　　　　　　　　　　　　　　　　　Kristina S. Azlin
　　　　　　　　　　　　　　　　　Stacey H. Wang

19  　　　　　　　　　　　　　　　　　Qian (Sheila) Shen

20  　　　　　　　　　　　　　　　　　Attorneys for Defendant
　　　　　　　　　　　　　　　　　University of the Pacific

21

22

23

24

25

26

27

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

UNIVERSITY OF THE PACIFIC'S　　　　　　　　　　CASE NO. 5:20-CV-03196-EJD
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT