HOLLAND & KNIGHT LLP
Vito A. Costanzo, SBN 132754
Kristina S. Azlin, SBN 235238
Stacey H. Wang, SBN 245195
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Fax: 213.896.2450
Email: vito.costanzo@hklaw.com
        kristina.azlin@hklaw.com
        stacey.wang@hklaw.com

Attorneys for Defendant
University of the Pacific

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| VINEY SAROYA, Individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br> v.<br><br>UNIVERSITY OF THE PACIFIC,<br><br>   Defendant. | Case No.: 5:20-cv-03196-EJD<br><br>*[Assigned to the Hon. Edward J. Davila, United States District Judge]*<br><br>**DEFENDANT UNIVERSITY OF THE PACIFIC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF VINEY SAROYA'S FIRST AMENDED COMPLAINT**<br><br>[Fed. R. Civ. P. 8, 12(b)]<br><br>Date:   November 19, 2020<br>Time:   9:00 a.m.<br>Courtroom: 4<br><br>Action Filed: May 10, 2020<br>Trial Date: TBD |

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

I.  INTRODUCTION ................................................................................................. 1

II. ARGUMENT ......................................................................................................... 3

    A.  PLAINTIFF CANNOT ESCAPE HIS OWN ALLEGATIONS THAT HIS CLAIMS ALL REST ON THE PURPORTED "DIMINISHED VALUE" OF DISTANCE LEARNING, WHICH, AS PLED, IMPLICATES THE EDUCATIONAL MALPRACTICE DOCTRINE. ........ 3

        1.  Plaintiff Fails To Acknowledge Case Law Applying The Educational Malpractice Doctrine To Changes In The Mode Of Instruction. ................. 3

        2.  Plaintiff's Damages Are Inherently Speculative. ........................................... 5

    B.  PLAINTIFF FAILS TO SATISFY HIS BURDEN OF PLEADING A BREACH OF CONTRACT CLAIM. ............................................................................................. 6

        1.  The Four Corners Of The FAC Do Not Identify A Specific Promise To Provide Exclusively In-Person Instruction During A Pandemic And In Violation Of Government Stay-At-Home Orders. ............................... 6

        2.  Plaintiff Presses An Illogical Reading Of The Reservation Of Rights. ....... 7

        3.  Plaintiff Misconstrues The Financial Agreement. ....................................... 8

        4.  Plaintiff's Contention That The Refund Policy Does Not Apply Is Illogical. ..................................................................................................... 10

        5.  The FAC Concedes No Causal Connection Between *Pacific's* Actions And Plaintiff's Asserted Injury. ................................................................. 10

    C.  PLAINTIFF'S ATTEMPT TO RE-PLEAD HIS UNJUST ENRICHMENT CLAIM BY MOTION FAILS. ............................................................................................... 11

    D.  PLAINTIFF'S MONEY HAD AND RECEIVED CLAIM DOES NOT ASSERT A SUM CERTAIN. ........................................................................................................... 13

    E.  PLAINTIFF'S ATTEMPT TO CURE HIS CONVERSION CLAIM FAILS. ................. 14

    F.  PLAINTIFF DOES NOT DISPUTE THAT HIS CLAIM FOR REFUNDS OF UNIDENTIFIED FEES FAILS TO SUFFICIENTLY PLEAD A CLAIM. ...................... 15

III. CONCLUSION ................................................................................................... 15

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

UNIVERSITY OF THE PACIFIC
REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS COMPLAINT

CASE NO. 5:20-CV-03196-EJD

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3

**Cases**

*Advanced Riggers & Millwrights, LLC v. Hoist Liftruck MFG, Inc.*,
No. 15-1400, 2015 WL 12860470 (C.D. Cal. Oct. 29, 2015)......................................................15

*Ancheta v. Mortg. Elec. Registration Sys., Inc.*,
No. 16-CV-06520-YGR, 2017 WL 3033630 (N.D. Cal. July 18, 2017)......................................6

*Beukas v. Bd. of Trs. of Fairleigh Dickinson Univ.*,
255 N.J. Super. 420 (1992) ......................................................................................................7, 8

*Caruso v. City of Irvine*,
No. SACV0711DOCRNBX, 2007 WL 9706239 (C.D. Cal. Mar. 12, 2007)..............................12

*Chong v. Northeastern Univ.*,
No. 20-10844-RGS (D. Mass. Oct. 1, 2020) ..........................................................................9, 12

*Horrigan v. E. Mich. Univ.*,
No. 20-000075-MK (Mich. Ct. Cl. Oct. 9, 2020) .........................................................................9

*Jallali v. Nova Se. Univ., Inc.*,
992 So.2d 338 (Fla. Ct. App. 2008).............................................................................................8

*Johnson v. GMRI, Inc.*,
No. CV F 07-0283LJODLB, 2007 WL 1490819 (E.D. Cal. May 21, 2007)...............................13

*Kashmiri v. Regents of Univ. of Cal.*,
156 Cal. App. 4th 809 (2007) .............................................................................................6, 7, 8

*Longest v. Green Tree Servicing LLC*,
74 F. Supp. 3d 1289 (C.D. Cal. 2015) ........................................................................................15

*Makaeff v. Trump Univ., LLC*,
No. 10-CV-940-IEG WVG, 2010 WL 3988684 (S.D. Cal. Oct. 12, 2010)..................................4

*Munning v. Gap, Inc.*,
238 F. Supp. 3d 1195 (N.D. Cal. 2017) ......................................................................................12

*One World Trade Ctr. LLC v. Cantor Fitzgerald Sec.*,
6 Misc. 3d 382 (Sup. Ct. N.Y. Cnty. 2004) .........................................................................7, 11

*Paulsen v. Golden Gate Univ.*,
25 Cal. 3d 803 (1979) ...............................................................................................................5, 8

-ii-

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

*Paynter v. N.Y. Univ.*,
   66 Misc. 2d 92 (N.Y. App. Div. 1971) ............................................................... 3, 4

*Roe v. Loyola Univ. of New Orleans*,
   No. CIV.A. 07-1828, 2007 WL 4219174 (E.D. La. Nov. 26, 2007) ...................... 4

*Ross v. Creighton Univ.*,
   957 F.2d 410 (7th Cir. 1992) ................................................................................. 5

*Rutherford v. FIA Card Servs., N.A.*,
   No. CV 11-04433 DDP MANX, 2012 WL 5830081 (C.D. Cal. Nov. 16, 2012) ......... 6

*Salerno v. Fl. S. Coll.*,
   -- F. Supp. 3d --, 2020 WL 5583522 (M.D. Fl. Sept. 16, 2020) ...................... 7, 15

*Searle v. Regents of Univ. of Cal.*,
   23 Cal. App. 3d 448 (1972) .................................................................................. 7

*Sezeen & Co. v JPMorgan Chase Bank, N. A.*,
   No. SACV1901971DOCJDE, 2020 WL 5289855 (C.D. Cal. June 25, 2020) ........... 14

*Shaw v. Sears*,
   No. SACV071361JVSANX, 2010 WL 11595818 (C.D. Cal. Oct. 18, 2010) ........... 15

*Star Fabrics, Inc. v. Ross Stores, Inc.*,
   No. CV 17-5877 PA, 2017 WL 10439691 (C.D. Cal. Nov. 20, 2017) .................. 15

*Vu v. Cal. Comm. Club, Inc.*,
   58 Cal. App. 4th 229 (1997) ................................................................................ 10

*Welco Elecs., Inc. v. Mora*,
   223 Cal. App. 4th 202 (2014) .............................................................................. 14

*Zumbrun v. Univ. of S. Cal.*,
   25 Cal. App. 3d 1 (1972) ....................................................................................... 7

*Zwiker v. Lake Super. State Univ.*,
   No. 1:20-cv-21813-JEM (Mich. Ct. Cl. Sept. 1, 2020) ........................................ 9

**Statutes**

Cal. Civ. Code §§ 3300-3301 ........................................................................................ 10

**Treatises**

Rstmt. (2d) of Contracts § 278 ........................................................................................ 8

Rstmt. (3d) of Restitution § 34 cmt. c ............................................................................ 10

-iii-

1

**Other Authorities**

2

UNIVERSITY OF THE PACIFIC COVID-19 RELIEF AND CARES ACT FAQ,
https://www.pacific.edu/financial-aid/scholarships/covid-19-financial-assistance-
faq#:~:text=University%20of%20the%20Pacific%20has,2020%20and%20spring
%202021%20semesters (last visited Oct. 27, 2020).................................................. 1

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNIVERSITY OF THE PACIFIC
REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS COMPLAINT

CASE NO. 5:20-CV-03196-EJD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     **INTRODUCTION**

University of the Pacific ("Pacific") is sympathetic to students whose semesters were unforeseeably interrupted by COVID-19 and government stay-at-home orders. Plaintiff's wild allegation, however, that Pacific "believes that its students should bear all of the costs of the COVID-19 pandemic" is improper and a transparent attempt to prejudice Pacific. Pacific took extraordinary measures to minimize the disruption to the semester caused by COVID-19, and wholly absorbed the costs of doing so with no tuition or fees increase to its students. Pacific also worked to prevent any increased financial burden on its students as a result of COVID-19, including distributing over $2.5 million in CARES Act relief funds directly to students and establishing a COVID-19 relief scholarship specifically aimed at minimizing the financial burden of education for the duration of the pandemic.[1]

Plaintiff's attempt to turn Pacific's response to the pandemic into a windfall for Plaintiff and the proposed class is not supported by either the law or the allegations of the First Amended Complaint ("FAC"). Regardless of how Plaintiff characterizes his claims, his purported damages— a refund of some portion of tuition and fees based on an unidentified formula, as compared to the cost of online courses at other unidentified educational institutions—necessitates an analysis of the difference in the *value and quality* of distance learning implemented as an emergency response to a global pandemic and government orders, as compared to in-person instruction during normal times. This is clear from the face of the FAC, regardless of how Plaintiff now recasts his claims. *See, e.g.,* Dkt. No. 25 ¶¶ 10, 31 (describing remote learning as "subpar" and "in no way equivalent [to] in-person instruction"); *id.* at ¶ 32 (asserting distance learning is "not even remotely worth the amount charged" and comparing Pacific's tuition to "other online institutions"); *see also* Dkt. No. 35 (Pl.'s Opp. to Motion to Strike) at 2:13-14 (Plaintiff characterizing his own claims as ones "related to the

---

[1] *See* Pl.'s Opp. at 16 n.4; *see also* UNIVERSITY OF THE PACIFIC COVID-19 RELIEF AND CARES ACT FAQ, https://www.pacific.edu/financial-aid/scholarships/covid-19-financial-assistance-faq#:~:text=University%20of%20the%20Pacific%20has,2020%20and%20spring%202021%20semesters (last visited Oct. 27, 2020).

-1-

1    quality of education after the transition to distance learning"); *id.* at 3:2-3 ("The allegations are

2    related to Plaintiff's claims as they set forth UOP's stance on the *quality* of online learning.")

3    (emphasis added).

4    Pacific's tuition and fee structure makes it clear that any damages in this action would

5    require an assessment of the *value* of Pacific's distance learning in response to COVID-19. Tuition

6    is charged at a flat rate for full-time undergraduate students like Plaintiff, up to 18 credits, and fees

7    are charged at flat rates per semester. *See* Dkt. No. 31-1 (Pallavicini Decl.), Ex. A (Stockton

8    Catalog) at 46-47. Tuition and fees remain the same regardless of which classes each student takes,

9    which activities they participate in, and which facilities and services they use. That was true before

10   COVID-19, and remains true during COVID-19—there is no apportionment of any tuition or fees

11   based on each student's individual participation.

12   To allow Plaintiff and the proposed class to recover tuition and fees refunds here—where

13   Pacific changed the mode of instruction after more than 2/3 of the semester was completed, and

14   continued to provide instruction and ancillary services for the full semester—would lead to an

15   absurd result where Pacific could potentially have to issue tuition and fees refunds for any minor

16   interruption to the semester, for example, if it has to restrict access to facilities for renovations, it

17   discontinues an intramural team, the campus is closed due to wildfires or earthquakes, or even if a

18   student misses class. Pacific's reservation of rights and refund policy are meant to address precisely

19   all of these situations, to ensure that Pacific can exercise its academic judgement and discretion in

20   determining how to safely provide instruction to its students in all scenarios. Plaintiff's challenge to

21   that discretion and academic judgment falls squarely within the educational malpractice doctrine.[2]

22   Even aside from the educational malpractice doctrine, Plaintiff's Opposition does not cure

23   the fundamental flaws in the FAC:

24   • Plaintiff does not, and cannot, cite any specific promise by Pacific to provide

25   exclusively in-person instruction even during a global pandemic and in violation of

26

27   _____

     [2] Plaintiff's reliance on other COVID-19 tuition refund cases is misplaced, as none of those cases
28   analyzed the educational malpractice doctrine under California law.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

-2-

government stay-at-home orders;

- Plaintiff makes illogical and unsupported arguments that neither Pacific's reservation of rights nor its refund policies apply to Plaintiff's breach of contract claims, which claims arise out of the very documents where those policies are stated;

- Plaintiff ignores recent case law applying the clear and unambiguous terms of student financial responsibility agreements and sets up a straw-man argument that the Financial Agreement here is unenforceable; and

- Plaintiff does not, and cannot, assert that Pacific's retention of tuition and fees was unjust when it provided instruction, education support, and services for the full semester and, ultimately, the credits bargained for in exchange for tuition.

Plaintiff does not, and cannot, overcome the legal and pleading deficiencies in the FAC. Plaintiff already has amended his complaint once—in response to Pacific's specific arguments raised in its motion to dismiss the original complaint. *See* Dkt. No. 22. Now, in response to Pacific's renewed motion against Plaintiff's FAC, Plaintiff attempts to further re-plead his claims by asserting new legal theories and factual allegations not found on the face of the FAC. Ultimately, nothing in Plaintiff's Opposition justifies allowing *any* of Plaintiff's claims to survive this motion to dismiss. The FAC should be dismissed with prejudice.

## II.   **ARGUMENT**

**A.   Plaintiff Cannot Escape His Own Allegations That His Claims All Rest On The Purported "Diminished Value" Of Distance Learning, Which, As Pled, Implicates The Educational Malpractice Doctrine.**

1.   Plaintiff Fails To Acknowledge Case Law Applying The Educational Malpractice Doctrine To Changes In The Mode Of Instruction.

Plaintiff's attempt to narrow the scope of the educational malpractice doctrine to instances concerning student academic performance and conduct, *see generally* Pl.'s Opp. at 4-7, ignores case law that applies the doctrine to situations exactly like this one, where universities are required to adjust the mode of instruction and academic policies in response to emergency circumstances. *See, e.g., Paynter v. N.Y. Univ.*, 66 Misc. 2d 92 (N.Y. App. Div. 1971) (dismissing tuition refund claim

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

-3-

1    arising out of NYU's closure of campus amidst nationwide protests); *Roe v. Loyola Univ. of New*

2    *Orleans*, No. CIV.A. 07-1828, 2007 WL 4219174, at *2 (E.D. La. Nov. 26, 2007) (applying

3    educational malpractice doctrine to bar claim for tuition refund where university closed campus and

4    arranged for students to attend other schools after Hurricane Katrina).

5         As in *Paynter* and *Roe*, there is no dispute here that Pacific's transition to distance learning

6    was in response to unprecedented emergency conditions. Pacific's compliance with government

7    stay-at-home orders to protect the health and safety of its students, faculty, staff, and community

8    was indisputably within its authority, and did require "academic judgment": Pacific had to assess

9    what, if any, mode of instruction and ancillary services could be implemented safely in the middle

10   of a pandemic, and what manner of instruction would maximize learning. Thus, Plaintiff's demand

11   for tuition refunds necessarily requires the Court to second-guess the soundness of such decision,

12   and the educational malpractice doctrine applies.

13        Plaintiff's reliance on *Makaeff v. Trump Univ.*, LLC, No. 10-CV-940-IEG WVG, 2010 WL

14   3988684 (S.D. Cal. Oct. 12, 2010) is misplaced. In fact, if *Makaeff*'s analysis and holding were

15   applied here, the educational malpractice doctrine would require dismissal of all claims. The

16   *Makaeff* court declined to apply the educational malpractice doctrine to claims against Trump

17   University for two reasons: (i) Trump University was a private, unaccredited, for-profit company

18   and, thus, not an educational institution, *see id*. at *3; and (ii) the plaintiff alleged that Trump

19   University did not provide an education *at all* but rather pulled a bait-and-switch by marketing "a

20   year-long real estate education and mentorship" and in actuality, "providing only a 3-day long

21   infomercial, designed to confuse, rather than educate, its students and to persuade them to purchase

22   even more seminars," *id.* at *3. Neither of those factors exists here. There is no dispute that Pacific

23   is a private, accredited, not-for-profit institute of higher education. Nor is there any dispute that

24   Pacific provided its students with academic instruction and credits, and ultimately a degree (if the

25   student meets all degree requirements), as promised upon enrollment.

26

27

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

-4-

1

2.      Plaintiff's Damages Are Inherently Speculative.

2

The concern expressed by the Seventh Circuit in *Ross v. Creighton Univ.*, 957 F.2d 410, 414

3

(7th Cir. 1992) over the speculative nature of any award of damages in cases like this further

4

supports barring Plaintiff's claims pursuant to the educational malpractice doctrine. Plaintiff's

5

demand for a refund of "tuition and fees, proportionate to the amount of time that remained in the

6

Spring Semester 2020 when classes moved online and campus services ceased being provided," *see*

7

Dkt. No. 25 ¶ 14, fails because the basic bargained-for exchange between a university and student is

8

tuition paid in exchange for instruction and credits. *Paulsen v. Golden Gate Univ.*, 25 Cal. 3d 803,

9

808 (1979). Critically, Pacific's tuition is set at a flat rate for full-time undergraduate students, like

10

Plaintiff, based on their credit load. *See id.* (full-time tuition at flat rate up to 18 credits per

11

semester; part-time tuition and tuition for course load exceeding 18 credits charged on a *per credit*

12

basis). This comports fully with the basic principle that the bargained-for exchange between a

13

university and student is tuition paid in exchange for instruction and credits. *Paulsen v. Golden*

14

*Gate Univ.*, 25 Cal. 3d 803, 808 (1979). As Plaintiff does not dispute that Pacific provided the

15

credits for which tuition was paid (upon completion of classes), the only basis for Plaintiff's

16

demand for a partial refund can be a purported difference in the value or quality of instruction

17

following the transition to distance learning. *Cf.* Pl.'s Opp. at 19-20.

18

To put a dollar value on the "services, facilities, access and/or opportunities that [Pacific]

19

has not provided," *see* Dkt. No. 25 ¶ 13, is inherently a question of how each individual student

20

*values* these services—some students may attend office hours every week while others attend as

21

needed (or never); some students participate in spectator sports and athletic programs while others

22

do not; some student spend all of their time on-campus while others pursue activities in their

23

communities; and the permutations of extracurricular activities students participate in are endless.

24

Regardless of which of these experiences Pacific's students engage in (if any), the student still pays

25

a pre-set tuition rate and pre-set fees, which are the same for all students within the same degree

26

program or school. *See, e.g.,* Stockton Catalog at 46. Any attempt to parse flat tuition rates and fees

27

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

-5-

across each individual student's personal engagement in the Pacific community necessarily requires an evaluation of how each student assessed the value and quality of each discrete engagement.

Indeed, Plaintiff apparently concedes that this action is ultimately about a perceived decline in the quality of education following the transition to distance learning. *See* Pl.'s Opp. at 7:6-7; *see also* Dkt. No. 25 ¶ 10 ("The remote learning options are in no way the equivalent of the in-person education that Plaintiff and the putative class members contracted and paid for."); *id.* at ¶ 32 ("The remote education being provided is not even remotely *worth* the amount charged class members for Spring Semester 2020 tuition."). Plaintiff cannot escape this conclusion through artful pleading.[3]

**B.      Plaintiff Fails To Satisfy His Burden Of Pleading A Breach of Contract Claim.**

1.      The Four Corners Of The FAC Do Not Identify A Specific Promise To Provide Exclusively In-Person Instruction During A Pandemic And In Violation Of Government Stay-At-Home Orders.

Plaintiff does not dispute that, on its face, the FAC does not plead a specific promise that Pacific would provide exclusively in-person instruction, much less that Pacific would provide *exclusively* in-person instruction even during a global pandemic and in violation of government stay-at-home orders. As pled, the FAC cites a single general description of "Campus Life" that contains no such promise. *See* Dkt. No. 25 ¶ 30. The rest of the FAC asserts only conclusory allegations that Pacific promised to provide in-person instruction, which is insufficient to satisfy Plaintiff's burden under *Kashmiri*. *Compare* FAC ¶¶ 11, 26-28 *with Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809, 833 (2007) (level of specificity required for the promise is high and must be akin to a promise that student fees would "remain the same for each student for the duration of his or her enrollment"). Notably, Plaintiff's Opposition does not identify any other portion of Pacific's catalogs or any other Pacific publication that contains a specific promise to provide exclusively in-person instruction even through COVID-19 and stay-at-home orders.

---

[3] The Court may look past Plaintiff's artfully pled claims to the substance of each cause of action, *see Rutherford v. FIA Card Servs., N.A.*, No. CV 11-04433 DDP MANX, 2012 WL 5830081, at *3 (C.D. Cal. Nov. 16, 2012), and that, while the Court may not "accept legal conclusions in the complaint as true, even if cast in the form of factual allegations," *Ancheta v. Mortg. Elec. Registration Sys., Inc.*, No. 16-CV-06520-YGR, 2017 WL 3033630, at *2 (N.D. Cal. July 18, 2017.

-6-

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

1    *Plaintiff*'s failure to plead a specific promise cannot be cured by looking to other recent

2    tuition refund cases, where the courts examined different pleadings and applied different standards

3    of review. *See* Pl.'s Opp. at 8:13 – 9:7. First, the requisite specificity under *Kashmiri* (which was

4    not applied by *Salerno*, a Florida case) is not satisfied by simply pleading that Pacific promised to

5    provide in-person instruction—Plaintiff must plead that Pacific promised to provide in-person

6    instruction *even during a global pandemic and despite government orders requiring Pacific to shut*

7    *its campus*. *See Kashmiri*, 156 Cal. App. 4th at 833. Second, the *Salerno* plaintiffs included in their

8    pleadings citations to university publications, which Plaintiff does not do here. *See Salerno v. Fl. S.*

9    *Coll.*, -- F. Supp. 3d --, 2020 WL 5583522, at *5 (M.D. Fl. Sept. 16, 2020). *Zumbrun* is also

10   distinguishable, as the four corners of the complaint specifically pled that the Sociology 200 course

11   would be conducted on specific dates, and Plaintiff alleged that the university failed to hold classes

12   on those dates. *See Zumbrun v. Univ. of S. Cal.*, 25 Cal. App. 3d 1, 7 (1972). Plaintiff falls far short

13   of including such specificity in the FAC.

14                  2.   <u>Plaintiff Presses An Illogical Reading Of The Reservation Of Rights.</u>

15         Plaintiff's attempt to restrict the scope of Pacific's reservation of rights is illogical. The

16   express and unambiguous language of the reservation of rights permits Pacific to modify its

17   services or change its programs "*at any time.*" *See, e.g.,* Stockton Catalog at 45. "At any time"

18   cannot reasonably be read to mean "only before a semester begins," *see* Pl.'s Opp. at 9, and Plaintiff

19   cites no authority for such a proposition. Plaintiff mischaracterizes the analysis of *Searle*, *Jallili*,

20   and *Beukas*. The *Searle* court found that the students' awareness of the denial of credit before the

21   semester was *one* basis on which to dismiss the claim. *See Searle v. Regents of Univ. of Cal.*, 23

22   Cal. App. 3d 448, 452 (1972). The university's reservation of rights was a second and separate basis

23   for dismissing the claim. *See id.* ("[T]he regents' specific reservation of authority *would also have*

24   *been a condition of any contract with either faculty or students*, thus negating the effect now

25   urged.") The *Jallili* court did not consider at all when the subject change to the university's policies

26   occurred, but instead held that a reservation of rights to modify policies "at any time" gave the

27   university discretion and was "consistent with the great deference that courts accord to private

28                                                       -7-

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

1   universities." *Jallali v. Nova Se. Univ., Inc.*, 992 So.2d 338, 342 (Fla. Ct. App. 2008). And the

2   *Beukas* decision makes no mention of the timing of the university's decision to close its dental

3   program subject to its reservation of rights, but does indicate that such closure occurred in the

4   middle of students' courses of study, as the university assisted with transferring students to other

5   schools. *Beukas v. Bd. of Trs. of Fairleigh Dickinson Univ.*, 255 N.J. Super. 420, 422 (1992).

6          Nor does Plaintiff cite any authority for his proposition that Pacific's reservation of rights

7   could not be invoked "after one party has already fully performed." Pl.'s Opp. at 9:13-14. The fact

8   that Plaintiff may have fully performed Plaintiff's payment obligations does not unwind the

9   reservation of rights—it is logical that a change in the manner of instruction based on exigent

10  factors would occur in the middle of a semester. Notably, even if it were determined that Pacific

11  made a specific promise to provide exclusively in-person instruction even during a pandemic and in

12  violation of government orders (which it did not), Plaintiff cannot now challenge Pacific's

13  transition to distance learning after accepting Pacific's substituted performance, and after Pacific

14  fully performed its substituted obligations. *See* Rstmt. (2d) of Contracts § 278.

15              3.      Plaintiff Misconstrues The Financial Agreement.

16         Plaintiff's representation that Pacific asserts the Financial Agreement "governs the *entire*

17  relationship between Plaintiff and Defendant" is incorrect. *See* Pl.'s Opp. at 10:2-3. The Financial

18  Agreement contains the terms of *Plaintiff's* tuition payment obligations, *see* Mot. at 10:23-25, and,

19  *along with Pacific's catalogs and other publications*, embodies the terms of the agreement between

20  Pacific and its students. *Kashmiri*, 156 Cal. App. 4th at 824.

21         Reviewing Pacific's publications together, Plaintiff's argument that Pacific's agreement

22  with its students "lacks mutual consideration" clearly fails. Students pay tuition in consideration for

23  instruction, academic credits, and ultimately a degree. *Paulsen*, 25 Cal. 3d at 808 (describing this as

24  the basic bargained-for exchange); *see* Financial Agreement at 1 (explaining student's obligations

25  to pay tuition); *see also generally*, Dkt. No. 25 ¶ 6 n.2 (full Stockton Catalog explaining that

26  services provided include variety of classes on set academic calendar, and degrees conferred in

27  accordance with major and minor requirements). The material terms of the university-student

28

REPLY IN SUPPORT OF PACIFIC'S                              CASE NO. 5:20-CV-03196-EJD
MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

agreement are likewise found when reviewing the Financial Agreement alongside the catalogs and Pacific's other publications. *Cf.* Pl.'s Opp. at 10:17-11:5; *but see* Dkt. No. 25 ¶ 6 n.2 at 46-47 (tuition schedule); *id.* at 417 (setting forth duration of services based on academic calendar); *id., generally* (describing courses offered). The catalogs also prescribe degree requirements. *See id.* at 10-11. *Cf.* Pl.'s Opp. at 11:6-19. Importantly, Plaintiff does not and cannot dispute that the Financial Agreement, Pacific's Catalogs, and other publications do not contain any promise to provide exclusively in-person instruction in the middle of a pandemic and in violation of the law.

Plaintiff's attempt to distinguish *Zwiker* is misplaced. First, Plaintiff does not actually dispute the existence of the Financial Agreement, and only sets up a straw-man argument as to the enforceability of the Financial Agreement based on a mischaracterization of Pacific's position concerning the reading of the Financial Agreement. *Compare* Pl.'s Opp. at 11:21-23 *with Zwiker v. Lake Super. State Univ.*, No. 1:20-cv-21813-JEM, Dkt. No. 35-1, at *9 (Mich. Ct. Cl. Sept. 1, 2020). Second, whether the plaintiff in *Zwiker* registered for courses utilizing a "Traditional Campus Instructional Method," *see Zwiker*, No. 1:20-cv-21813-JEM, Dkt. No. 35-1, at *9, was not central to the court's analysis. Instead, the court's dismissal of the breach of contract claim rested on Plaintiff's failure to proffer any documents which included a promise by the university to provide only in-person instruction. *See id.* at *7-8; *see also Chong v. Northeastern Univ.*, No. 20-10844-RGS, Dkt. No 36, at 6-7 (D. Mass. Oct. 1, 2020) (finding financial responsibility agreement required dismissal of plaintiff's breach of contract claim because "[i]t ties the payment of tuition to registration for courses, not to the receipt of any particular method of course instruction.").

Indeed, in a recent Michigan Court of Claims case involving a tuition refund claim arising out of COVID-19 transitions to distance learning, the court dismissed plaintiff's breach of contract claim where the clear and unambiguous language of the student financial responsibility agreement provided that tuition was to be paid in consideration for class registration. *See Horrigan v. E. Mich. Univ.*, No. 20-000075-MK, Dkt. No. 45-3, at 7 (Mich. Ct. Cl. Oct. 9, 2020). The *Horrigan* court held it inappropriate to interpret such unambiguous language to mean that a student's obligation to pay tuition is predicated on receiving in-person instruction. *Id.* Likewise, here, the Financial

-9-

REPLY IN SUPPORT OF PACIFIC'S
MOTION TO DISMISS
FIRST AMENDED COMPLAINT

CASE NO. 5:20-CV-03196-EJD

1   Agreement provides that tuition is paid in consideration for course registration, grades, and

2   diplomas. *See* Financial Agreement at 1. This clear and unambiguous language cannot be

3   interpreted to mean that Plaintiff's obligation to pay tuition was conditioned on Pacific providing

4   in-person instruction.

5            4.       Plaintiff's Contention That The Refund Policy Does Not Apply Is Illogical.

6            Plaintiff's assertion that Pacific's refund policy does not apply to students who remain

7   enrolled for the full semester is unsupported and illogical. *See* Pl.'s Opp. at 12. The refund policy is

8   incorporated into *every* course catalog, binding on *every* student. That Plaintiff did not withdraw

9   within the time frame for partial refunds during the spring 2020 term (or at all) does not make the

10  policy inapplicable to him—it simply means that, under the clear and unambiguous terms of

11  Pacific's policy, Plaintiff is not eligible for or entitled to a refund.

12           5.       The FAC Concedes No Causal Connection Between *Pacific's* Actions And
                      Plaintiff's Asserted Injury.

13

14           Plaintiff's Opposition attempts to walk back his own concession in the FAC that Pacific

15  "did not have a choice in cancelling in-person classes." *See* Dkt. No. 25 ¶ 13. Plaintiff does not

16  dispute or challenge the applicability of Cal. Civ. Code §§ 3300-3301 and *Vu v. Cal. Comm. Club,*

17  *Inc.*, 58 Cal. App. 4th 229, 233-34 (1997), which require a breach of contract to plead causation

18  through the *defendant's* actions. In tacit acknowledgment of such pleading deficiency, Plaintiff

19  now asserts that Pacific made a "*decision* to move all in-person classes online." Pl.'s Opp. at 13:9.

20  Such assertion is contradicted by the face of the FAC.

21           Plaintiff's discussion of impossibility of performance is also misdirected. *Cf.* Pl.'s Opp. at

22  13:11-17. Pacific contends that it fully performed by providing course registration, grades,

23  instruction, and diplomas (when earned) in exchange for payment of tuition and fees. Even if an

24  impossibility defense is raised, it would not entitle Plaintiff to any partial refund of tuition and fees

25  here, because the parties allocated the risk of performance. Rstmt. (3d) of Restitution § 34 cmt. c.

26  ("[I]nterrupted performance results in no unjust enrichment—even when the sequence of

27

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

-10-

1    performance is obviously unbalanced—if the agreement, whether expressly or by implication,

2    allocates the risk of interruption to the party whose performance is the more advanced.").

3        The Restatement provides as illustrative the Southern District of New York's analysis in

4    *One World Trade Ctr. LLC v. Cantor Fitzgerald Sec.*, 6 Misc. 3d 382 (Sup. Ct. N.Y. Cnty. 2004),

5    which is applicable here. In that case, plaintiff-landlord brought a breach of lease claim against

6    defendant-tenant, and defendant-tenant counterclaimed, seeking as restitution rent abatement for the

7    period after the building was destroyed in the September 11th attacks. *Id.* at 385-86. The court

8    dismissed the counterclaim, holding:

> As to defendants' counterclaim for unjust enrichment, it similarly is barred because
> even assuming that the rental rate in effect prior to the destruction of the Building was
> "increased" in contemplation of future benefits under the Lease, there is no provision
> in the Lease for recoupment of such payments where the Lessor's future performance
> is rendered impossible due to the destruction of the Building without any fault of
> plaintiff. As stated long ago by the First Department, "[i]f by the terms of [the] lease
> rent is to be paid in advance, the tenant comes under an absolute engagement to pay it
> on the day fixed, and he is not relieved from that engagement by the fact that the
> property is destroyed . . . and [tenant] is liable to pay the rent due in advance even
> though the destruction takes place on the very day it falls due." *Werner v. Padula*, 49
> A.D. 135, 138, 63 N.Y.S. 68 (1st Dept. 1900).

15   *Id.* at 386.

16       As applied here, tuition was paid at the beginning of the semester, with the parties allocating

17   risks pursuant to the terms of Pacific's refund policy, which provides that students may be issued

18   partial refunds up through the mid-point of the semester if the student fully withdraws from all

19   classes. *See* Stockton Catalog at 49. The risk of Pacific being legally precluded from providing in-

20   person instruction after the semester started was thus built into the parties' agreement. Plaintiff

21   could have withdrawn well before Pacific suspended in-person instruction. Instead, he remained

22   enrolled and received the credits for which he paid.  As such, Plaintiff is not entitled to any tuition

23   or fees refund.

24       **C.    Plaintiff's Attempt To Re-Plead His Unjust Enrichment Claim By Motion Fails.**

25       While a plaintiff generally may plead unjust enrichment in the alternative, the FAC has not

26   pled any factual allegations that justify allowing his unjust enrichment claim to survive this Motion

27   to Dismiss. The FAC does not assert that the contract between Pacific and Plaintiff is

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

-11-

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

1     unenforceable, nor does it assert that no contract actually governs this dispute. In fact, the FAC

2     expressly alleges that there *is* an enforceable contract *which does* govern this dispute. *See, e.g.,* Dkt.

3     No. 25 ¶¶ 3-4. Plaintiff's contradictory argument in his Opposition should be ignored. *See Caruso*

4     *v. City of Irvine*, No. SACV0711DOCRNBX, 2007 WL 9706239, at *5 (C.D. Cal. Mar. 12, 2007)

5     (because the court must take as true allegations pled in complaint, it should not consider

6     contradictory positions argued in opposition to a motion to dismiss). And, despite Plaintiff's

7     objection, there can be no dispute as a matter of law that Plaintiff is not entitled to any tuition or

8     fees refund under the terms of his contract pursuant to the Financial Agreement and Pacific's tuition

9     refund policy. *See* Section II.B., *supra*; *see also* Mot. at Section IV. B. At bottom, Plaintiff cannot

10    plead restitution in the alternative where he has an adequate remedy at law, regardless of the

11    viability of such remedy. *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203 (N.D. Cal. 2017); *see*

12    *also Chong*, No. 20-10844-RGS, Dkt. No 36, at 6-7 (dismissing unjust enrichment claims where

13    breach of contract claim provided adequate remedy at law, even if breach of contract claims failed

14    to state a claim upon which relief may be granted).

15            Plaintiff's argument that Pacific was unjustly enriched rests entirely on a wild and

16    unsupportable accusation that Pacific somehow profited from COVID-19, which (i) is not alleged in

17    the FAC; and (ii) flatly contradicted by documents. *See* Pl.'s Opp. at 16. First, as pled, the unjust

18    enrichment claim rests solely on a conclusory assertion that Pacific unjustly retained tuition and

19    fees for services not provided. *See* Dkt. No. 25 ¶ 60. Nowhere in the FAC is there any allegation

20    that Pacific was enriched by cost savings as a result of COVID-19. *Compare* Dkt. No. 25 *with* Pl.'s

21    Opp. at 16. As pled, that claim is governed by and must be disposed as a result of the Financial

22    Agreement. *See* Section II.B., *supra*. Second, Plaintiff's (unpled) allegations that Pacific somehow

23    benefited from COVID-19 and the transition to distance learning is incorrect and inflammatory. As

24    a starting point, a student's cost of attendance covers only approximately 75% of Pacific's cost of

25    instruction and services. *See* Stockton Catalog at 46. The balance of the cost of each student's

26    education is met by income from Pacific's endowment, and gifts from, *inter alia*, regents, parents,

27    alumni, and friends of the university. *Id.* Pacific wholly absorbed the steep costs of changing the

28

REPLY IN SUPPORT OF PACIFIC'S                                    CASE NO. 5:20-CV-03196-EJD
MOTION TO DISMISS
FIRST AMENDED COMPLAINT

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

1  mode of instruction mid-semester and on little notice, with no tuition or fees increase to its students,

2  and there were no cost savings for any of Pacific's fixed costs, which were budgeted for and

3  incurred before the transition to distance learning.

4      Plaintiff's claim that Pacific received a "bailout" under the CARES Act, *see* Pl.'s Opp. at

5  16:12-13, purposefully omits that Pacific specifically earmarked $2,582,435 in relief funds received

6  for disbursement to students. *See* Pl.'s Opp. at 16 n.4. In addition to CARES Act relief, Pacific also

7  formed the COVID-19 Relief Scholarship to provide ongoing support to its students. *See* n.1, *supra*

8  Ultimately, Plaintiff's arguments against dismissal of his unjust enrichment claim is nothing more

9  than an attempt to shift to Pacific the *entire* burden of the unprecedented impact of COVID-19—a

10  result that itself would be manifestly unjust.

11      **D.      Plaintiff's Money Had And Received Claim Does Not Assert a Sum Certain.**

12      Plaintiff cannot plead a money had and received claim in the alternative to his breach of

13  contract claim here for the same reason he cannot plead unjust enrichment in the alternative. *See*

14  Section II.B., *supra*. Plaintiff does not dispute that his money had and received claim fails if his

15  breach of contract claim fails. *See* Pl.'s Opp. at 16:19-20.

16      Plaintiff's money had and received claim also fails for an independent reason: Plaintiff does

17  not plead a sum certain—a requisite element in pleading such a claim. *Johnson v. GMRI, Inc.*, No.

18  CV F 07-0283LJODLB, 2007 WL 1490819, at *6 (E.D. Cal. May 21, 2007). Estimates are not

19  sufficient. *Id.* Here, the money had and received claim, as pled, makes no attempt to assert a sum

20  certain. *See* Dkt. No. 25 ¶¶ 63-70. Nor does Plaintiff's claim in the Opposition that he is "entitled to

21  a refund of all tuition for the in-person classes he was promised but was not provided." Plaintiff

22  asserts no sum certain, estimate, or even formula by which such sum could reasonably be

23  ascertained. *See* Pl.'s Opp. at 17:7-13. Indeed, as discussed in Section II.A.1., *supra*, and in

24  Pacific's moving memorandum of points and authorities, Plaintiff's vague damages claim is too

25  speculative to sustain *any* of his claims, and is evidence that, at their core, all of the claims in the

26  FAC implicate the educational malpractice doctrine.

27

28

-13-

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

E.     **Plaintiff's Attempt To Cure His Conversion Claim Fails.**

First, Plaintiff has not pled an amount purportedly converted that is "capable of identification." *Cf.* Pl.'s Opp. at 18:4-13 (and cases cited therein). Instead, Plaintiff pleads a demand for some unidentified proportion of tuition and fees paid based on an unidentified formula, and as compared to unidentified tuition rates for online classes at other unidentified institutes. *See* Dkt. No. 25 ¶ 39(c) (seeking refund for an unspecific portion of fees paid for unidentified services Pacific purportedly did not provide); *id.* at ¶ 32 (comparing Pacific's tuition to unnamed "other online institutions"); *see also generally, id.* (making no mention of how refund should be calculated).

Second, *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202 (2014), cited in the Opposition at 18, actually supports the conclusion here that Plaintiff has asserted a claim for an overcharge that is non-actionable as conversion. In *Welco*, the defendant allegedly set up a scheme whereby plaintiff's credit card was charged without plaintiff's approval for allegedly fictitious business expenses. In holding that the case did not "concern a simple overcharge," the court focused on the fact that plaintiff did not consent to defendant using his credit card or its information. *See id.* at 215. Here, by contrast, Plaintiff does not and cannot dispute that he assented to turning over tuition and fees to Pacific prior to the beginning of the spring 2020 semester when he registered for classes. Plaintiff only disputes Pacific's *retention* of the entire amount based on a purported difference in the *quality* of distance learning, which is fundamentally a claim that Pacific overcharged for the portion of the semester that was transitioned to distance learning. Notably, Plaintiff never sought a refund prior to filing this action and, on that point, his reliance on *Sezeen & Co. v JPMorgan Chase Bank, N. A.*, No. SACV1901971DOCJDE, 2020 WL 5289855, at *5 (C.D. Cal. June 25, 2020) is misplaced.

Third, Plaintiff's argument that the refund policy does not apply to him fails for the reasons discussed in Section II.B.4., *supra*. And Plaintiff's newly asserted theory that Pacific somehow "benefited" from the transition to distance learning is not pled in the FAC, and indisputably incorrect, as explained in Section II.C., *supra*. Plaintiff's attempt to prejudice Pacific by asserting that Pacific received a "significant bailout" from the CARES Act glaringly omits that Pacific distributed over $2.5 million in relief funds to students. *See* Pl.'s Opp. at 16 n.4.

-14-

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

Lastly, Plaintiff's argument that the economic loss rule does not bar his claim flatly fails. The FAC has not pled any misappropriation of funds, *see generally* Dkt. No. 25, and Plaintiff cannot re-plead his conversion claim via a single conclusory sentence in his Opposition that Pacific "had an independent duty not to misappropriate moneys paid by Plaintiff." Notably, even in citing the standard, Plaintiff *does not* actually assert that Pacific misappropriated any tuition or fees. The conversion claim, as pled, only asserts that Pacific retained full tuition and fees without providing the services for which such tuition and fees were paid, *see* Dkt. No. ¶ 68.[4] Moreover, the *damages* Plaintiff seeks in connection with his conversion claim are identical to the damages sought under his breach of contract claim. *See Advanced Riggers & Millwrights, LLC v. Hoist Liftruck MFG, Inc.*, No. 15-1400, 2015 WL 12860470, at *7 (C.D. Cal. Oct. 29, 2015) (economic loss rule bars conversion claim "where the alleged damages are the same economic losses arising from [an] alleged breach of contract"). Plaintiff cites no authority for his proposition that a *conversion* claim may be pled in the alternative to a breach of contract claim. *Cf. Salerno*, No. 8:20-CV-1494-30SPF, 2020 WL 5583522 (M.D. Fla. Sept. 16, 2020) (only considering unjust enrichment claim); *Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289, 1032 (C.D. Cal. 2015) (same).

**F.    Plaintiff Does Not Dispute That His Claim For Refunds Of Unidentified Fees Fails To Sufficiently Plead A Claim.**

Plaintiff has not opposed dismissal of his claims for refunds of unidentified fees. *Compare* Mot. at 20:9-13 *with* Pl.'s Opp. As such, all of Plaintiff's claims, to the extent they seek refunds of these unidentified fees, must be dismissed. *Star Fabrics, Inc. v. Ross Stores, Inc.*, No. CV 17-5877 PA (PLAX), 2017 WL 10439691, at *3 (C.D. Cal. Nov. 20, 2017).

**III.    CONCLUSION**

For all of the reasons detailed herein, Pacific respectfully requests an order dismissing Plaintiff's Complaint in its entirety, with prejudice.

---

[4] Plaintiff's reliance on *Shaw v. Sears*, No. SACV071361JVSANX, 2010 WL 11595818 (C.D. Cal. Oct. 18, 2010) for the proposition that he has sufficiently pled a conversion claim here is unavailing. *Shaw* is an unpublished decision from another district, which dealt with a *pro se* plaintiff and has never been cited by any other court.

-15-

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED: October 28, 2020                    Respectfully submitted,

HOLLAND & KNIGHT LLP


By:/s/ Vito A. Costanzo
    Vito A. Costanzo
    Kristina S. Azlin
    Stacey H. Wang

    Attorneys for Defendant
    University of the Pacific

-16-