HOLLAND & KNIGHT LLP
Vito A. Costanzo, SBN 132754
Kristina S. Azlin, SBN 235238
Stacey H. Wang, SBN 245195
Qian (Sheila) Shen, SBN 332048
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Fax: 213.896.2450
Email:  vito.costanzo@hklaw.com
            kristina.azlin@hklaw.com
            stacey.wang@hklaw.com
            qian.shen@hklaw.com

Attorneys for Defendant
UNIVERSITY OF THE PACIFIC

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRISTAN RANDALL, Individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>UNIVERSITY OF THE PACIFIC,<br><br>                    Defendant. | Case No.: 5:20-cv-03196-EJD<br><br>[*Assigned to the Hon. Edward J. Davila, United States District Judge*]<br><br>**DEFENDANT UNIVERSITY OF THE PACIFIC'S STATEMENT OF RECENT DECISION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:           May 19, 2022<br>Time:          9:00 a.m.<br>Courtroom:  4<br><br>Action Filed: May 10, 2020<br>Trial Date:    TBD |

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

Defendant University of the Pacific ("Pacific"), by and through its counsel of record, hereby files this Statement of Recent Decision in support of Defendant's Motion for Summary Judgment ("Motion for Summary Judgment").  (See Dkt. 75.)

Pacific files this Statement of Recent Decision regarding a March 29, 2022 decision granting a demurrer and motion to strike from the Los Angeles Superior Court in the case captioned *UC Remote Cases*, Case No. JCCP5112.  A true and correct copy of the decision dated March 29, 2022 is attached hereto as Exhibit A.

DATED: May 12, 2022                    HOLLAND & KNIGHT LLP

By */s/ Vito A. Costanzo*
          Vito A. Costanzo
          Kristina S. Azlin
          Stacey H. Wang
          Qian (Sheila) Shen

          Attorneys for Defendant,
          University of the pacific

# Exhibit A

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAR 29 2022

Sherri R. Carter, Executive Officer/Clerk of Court
By: Roxanne Arraiga, Deputy

## FINAL RULINGS/ORDERS RE: DEMURRER AND MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED CONSOLIDATED COMPLAINT

<u>UC Remote Cases</u>, Case No.: JCCP5112

Defendant The Regents of the University of California's Demurrer to First Amended Consolidated Complaint (FAC) is **SUSTAINED**, without leave to amend.

Defendant The Regents of the University of California's Motion to Strike FAC is **MOOT**.

The Parties' Requests for Judicial Notice are **GRANTED**, (except as to truth).

I.

INTRODUCTION

This is a Judicial Council Coordination Proceeding involving several putative class actions filed by plaintiffs on behalf of themselves and all other similarly situated students enrolled at University of California campuses. Each class action complaint generally alleges that in response to the COVID-19 pandemic and State of California stay-at-home orders, Defendant The Regents of the University of California shut down all University of California campus facilities, discontinued all live in-classroom instruction, and moved all instruction to remote online media. However, in breach of their obligations to each student, Defendant continues to charge full, pre-shutdown tuition and fees without allowing students to use campus services and facilities.

On March 2, 2021, Plaintiffs Andrew Pham, Ashley Chen, and Maribelle Assaad Boutros (Plaintiffs) filed their consolidated class action complaint. In the consolidated complaint, Plaintiffs asserted the following causes of action: (1) breach of contract; (2) unjust enrichment/quasi-contract (implied in law); and (3) conversion.

On July 29, 2021, the Court sustained Defendant's demurrer to the consolidated complaint as to all causes of action, with leave to amend only as to the breach of contract cause of action.

On September 8, 2021, Plaintiffs filed their first amended consolidated class action complaint (FAC).  In the FAC, Plaintiffs assert the following causes of action: (1) breach of express contract (for fees); (2) breach of implied-in-fact contract (for fees); (3) breach of implied-in-fact contract (for tuition); and (4) implied-in-law quasi-contract (as to fees and tuition, in the alternative).

On October 4, 2021, Defendant filed the pending demurrer to and motion to strike the FAC.

II.

DISCUSSION

A.   Preliminary Matters

    1.   Meet and Confer

Defendant's attorney Marc R. Shapiro attests in his declaration that he met and conferred telephonically with Plaintiffs' counsel on September 29, 2021, pursuant to Code of Civil Procedure §§ 430.41(a) and 435.5(a).  Such meet and confer occurred more than five days before the demurrer and motion to strike were filed on October 4, 2021, pursuant to Code of Civil Procedure §§ 430.41(a)(2) and 435.5(a)(2).

    2.   Requests for Judicial Notice

The parties again request judicial notice of documents previously filed in connection with Defendant's demurrer to and motion to strike Plaintiffs' initial consolidated complaint. For the same reasons stated in its July 28, 2021 ruling, the Court again grants the parties' request for judicial notice, except as to the truth of any reasonably disputable matters contained in the documents.

B.   Applicable Law - Generally

"[A] demurrer tests the legal sufficiency of the allegations in a complaint."  Lewis v. Safeway, Inc. (2015) 235 Cal.App.4th 385, 388.  A demurrer can be used only to challenge defects that appear on the face of the pleading under attack or from matters outside the pleading that are judicially noticeable.  See Donabedian v. Mercury Insurance Co. (2004) 116 Cal.App.4th 968, 994 (in ruling on a demurrer, a court may not consider declarations, matters not subject to judicial notice, or documents not accepted for the truth of their contents).  For

the purpose of ruling on a demurrer, all facts pleaded in a complaint are assumed to be true, but the reviewing court does not assume the truth of conclusions of law.  Aubry v. Tri-City Hospital District (1992) 2 Cal.4th 962, 967.

Upon motion or sua sponte, a court may strike any portion of a pleading that is "irrelevant, false, or improper" or "not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court."  Code Civ. Proc., § 436(a), (b).  "The grounds for a motion to strike shall appear on the face of the challenged pleading or from any matter of which the court is required to take judicial notice."  Code Civ. Proc., § 437(a).

C.   Demurrer

1.   Plaintiffs Have Not Sufficiently Alleged Their Second and Third Causes of Action:  Breach of Implied Contract

a.   As a Preliminary Matter, the Educational Malpractice Doctrine Does Not Apply

As in its prior demurrer, Defendant again contends that the educational malpractice doctrine applies to the parties' dispute.  Although the authorities are split on whether the educational malpractice doctrine forecloses claims challenging remote instruction during the COVID-19 pandemic, the FAC's amended allegations suggest the doctrine may be inapplicable here.  In ruling on Defendant's pending demurrer and motion to strike, the Court must take the FAC's allegations as true and construe the FAC in the light most favorable to Plaintiffs. Accordingly, for the reasons below, the Court declines to apply the educational malpractice doctrine to Plaintiffs' allegations in the FAC.

Under the educational malpractice doctrine, "[t]here is a widely accepted rule of judicial non-intervention into the academic affairs of schools."  Paulsen v. Golden Gate University (1979) 25 Cal.3d 803, 808; see also Banks v. Dominican College (1995) 35 Cal.App.4th 1545, 1551 (judicial review of academic decisions is "highly deferential and [has a] limited standard of review").  The doctrine results from the recognition "that in matters of scholarship, [] school authorities are uniquely qualified by training and experience to judge the qualifications of a student, and efficiency of instruction depends in no small degree upon the school faculty's freedom from interference from other noneducational tribunals."  Wong v. Regents of University

of California (1971) 15 Cal.App.3d 823, 830 (quoting Connelly v. University of Vt. and State Agr. College (D. Vt. 1965) 244 F.Supp. 156, 160); Peter W. v. San Francisco Unified Sch. Dist. (1976) 60 Cal.App.3d 814, 823-825 (deference owed because there is no "actionable 'duty of care'" for "administ[ration of] the academic phases of the public educational process").

Accordingly, courts will not entertain complaints about the quality of education or failure to deliver adequate instruction, including "pedagogical methods or the quality of the school's classes, instructors, curriculum, textbooks, or learning aids, . . . evaluation of individual students' progress or achievement, or the reasons for their success or failure." Wells v. One2One Learning Foundation (2006) 39 Cal.4th 1164, 1212 (dismissing claim that "raise[d] issues of the quality of education offered by the charter school defendants, or of the academic results produced"); see also Chevlin v. Los Angeles Community College Dist. (1989) 212 Cal.App.3d 382, 389 ("the law refuses to hold a public school system liable to a student who claims he was inadequately educated."); Smith v. Alameda County Social Services Agency (1979) 90 Cal.App.3d 929, 941-942 (citing Peter W. and dismissing case that alleged school failed to "provid[e] appropriate educational training").

Such deference is "not confined to the classroom" and extends to "extracurricular programs." Christian Legal Soc. Chapter of the University of California, Hastings College of the Law v. Martinez (2010) 561 U.S. 661, 686 (deferring to UC extracurricular policy, noting that "judges lack the on-the-ground expertise and experience of school administrators"). Some courts have found that the educational malpractice doctrine forecloses precisely the type of claims at issue here. In Lindner v. Occidental College (C.D. Cal., Dec. 11, 2020) 2020 WL 7350212, the plaintiffs argued they were entitled to refunds as a result of the defendant's shift to remote instruction during the COVID-19 pandemic. Applying California law, the Lindner court rejected the plaintiffs' efforts to plead around the academic deference doctrine and dismissed their breach of contract, unjust enrichment, and conversion claims. Id. at *7; accord Gociman v. Loyola University of Chicago (N.D. Ill., Jan. 25, 2021) 2021 WL 243573, at *3 (plaintiffs' challenge to quality of online instruction barred by educational malpractice doctrine).

Plaintiffs' original complaints acknowledged their theory asserts that online learning is "subpar in practically every aspect," "substandard," "inadequate, subpar," and "not

equivalent in value to actual in-person classroom instruction." Funkhouser Complaint, ¶ 6; Lee Complaint, ¶¶ 14, 16; Mockler Complaint, ¶¶ 52, 56; Stoffel Complaint, ¶¶ 19-20.

Previously, the Court took judicial notice of these allegations in Plaintiffs' original complaints under the "sham pleading" doctrine. Although a court generally must take the allegations in a complaint as true when ruling on a demurrer, "an exception exists where a party files an amended complaint and seeks to avoid the defects of a prior complaint either by omitting the facts that rendered the complaint defective or by pleading facts inconsistent with the allegations of prior pleadings." Owens v. Kings Supermarket (1988) 198 Cal.App.3d 379, 384.

> In these circumstances, the policy against sham pleading permits the court to take judicial notice of the prior pleadings and requires that the pleader explain the inconsistency. If he fails to do so the court may disregard the inconsistent allegations and read into the amended complaint the allegations of the superseded complaint.

Id. "The exception is reserved, however, for the extreme case, and it may not be indiscriminately applied; it 'must be taken together with its purpose, which is to prevent amended pleading which is only a sham, when it is apparent that no cause of action can be stated truthfully.' [Citations.]" Amarel v. Connell (1988) 202 Cal.App.3d 137, 144. Because Plaintiffs previously failed to adequately address the inconsistent allegations, the Court exercised its discretion and invoked the sham pleading doctrine, reading the superseded allegations into the original consolidated complaint.

In contrast, the amended allegations in the FAC sufficiently explain Plaintiffs' contention that Defendant's move to remote learning had nothing to do with determining the best pedagogical methods or measuring student progress. FAC, ¶¶ 103-106. In the FAC, Plaintiffs specifically contend that Defendant shifted to remote learning as a response to State and local restrictions on public gatherings due to the COVID-19 pandemic. FAC, ¶¶ 1, 3, 44, 47. In their pending demurrer, Defendant appears to concede that their decision to move to remote learning was primarily motivated by the State's March 4, 2020 state of emergency declaration and subsequent March 19, 2020 stay-at-home order. Demurrer at 3. As such, Defendant's decision appears to be not primarily based on "academic

judgments protected by the [educational malpractice] doctrine"
because Defendant "discontinued allegedly promised in-person
instruction due to professed medical necessity, not the
doctrine's contemplated pedagogical considerations." Arredondo
v. University of La Verne (C.D. Cal., Apr. 21, 2021) 2021 WL
1588995, at *3. As another federal district court explained,
"the decision to suddenly shift to online education can hardly
be characterized as an 'academic decision' within the meaning of
that doctrine. Indeed, the decision to cease in-person
instruction involved no judgment, much less an academic one,
because Defendant was mandated by government orders to do so."
McCarthy v. Loyola Marymount University (C.D. Cal., Jan. 8,
2021) 2021 WL 268242, at *3.

Defendant contends that the educational malpractice
doctrine still applies because Plaintiffs allege that the
"market price" of an on-campus education is more than the
"market price" for online instruction. Demurrer at 6 (quoting
FAC, ¶¶ 21, 105). However, Plaintiffs expressly alleges that
this case is not "about whether the move to an online format
resulted in inferior learning experiences for students. The
issue here is much simpler: Defendant charged students for
services Defendant did not provide." FAC, ¶ 21. As Plaintiffs
note, the gravamen of the FAC is that they paid for an on-campus
education but did not receive one, regardless of the quality of
remote classes versus the quality of on-campus classes. Id., ¶¶
21, 37, 99. Plaintiffs also do not allege that an on-campus
education costs more because it is more effective than remote
learning. Id., ¶¶ 9-10, 19, 40-41, 48.

As such, Plaintiffs amended allegations in the FAC bring
this case closer to cases such as Zumbrun v. University of
Southern California (1972) 25 Cal.App.3d 1; Kashmiri v. Regents
of University of California (2007) 156 Cal.App.4th 809; Saroya
v. University of the Pacific (N.D. Cal. 2020) 503 F.Supp.3d 986,
Arredondo, and McCarthy. In Zumbrun, professors intentionally
neglected their duties by declining to teach a month of classes
or offer a final exam to protest United States foreign policy.
25 Cal.App.3d at 10. In Kashmiri, the Regents made and then
breached a promise not to raise professional student fees. 156
Cal.App.4th at 818-819. The allegations in Saroya and Arredondo
were not that the school "failed to provide students with an
adequate education, but that it failed to provide certain
services as promised." Saroya v. University of the Pacific
(N.D. Cal. 2020) 503 F.Supp.3d 986, 996 (allegations that
institution failed to deliver on-campus instruction, not that

online education is inferior); <u>Arredondo</u>, 2021 WL 1588995, at *2 (same).

Finally, the parties dispute whether the educational malpractice doctrine applies to fees charged for access to student activities, facilities, and transportation. However, as noted above, the educational malpractice doctrine does not apply to Plaintiffs' amended allegations in the FAC.

    b.  <u>Plaintiffs Fail to Allege Defendant's Specific Promise, As Required for an Implied Contract</u>.

Under California law, "[a] contract is either express or implied." Civ. Code, § 1619. The terms of an express contract are stated in words. Civ. Code, § 1620. The existence and terms of an implied contract are manifested by conduct. Civ. Code, § 1621. "The distinction reflects no difference in legal effect but merely in the mode of manifesting assent." <u>Retired Employees Assn. of Orange County, Inc. v. County of Orange</u> (2011) 52 Cal.4th 1171, 1178 (citing 1 Witkin, <u>Summary of Cal. Law</u> (10th ed. 2005) Contracts, § 102). An implied contract "consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words." <u>Silva v. Providence Hospital of Oakland</u> (1939) 14 Cal.2d 762, 773.

"The essential elements of a claim of breach of contract, whether express or implied, are the contract, the plaintiff's performance or excuse for nonperformance, the defendant's breach, and the resulting damages to the plaintiff." <u>Green Valley Landowners Assn. v. City of Vallejo</u> (2015) 241 Cal.App.4th 425, 433.

California courts recognize that the relationship between a student and a university or college is contractual in nature. <u>Zumbrun</u>, 25 Cal.App.3d at10 (students and private university had contractual relationship); <u>Andersen v. Regents of University of California</u> (1972) 22 Cal.App.3d 763, 769 (students and public university had contractual relationship). "The catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant become a part of the contract." <u>Zumbrun</u>, 25 Cal.App.3d at 10.

However, in light of the educational malpractice doctrine, contract law should not be rigidly applied to the contractual relationship between students and educational institutions, "especially in actions challenging the academic decision of a

university or a student's qualifications for a degree."
Kashmiri v. Regents of University of California (2007) 156
Cal.App.4th 809, 825.

> Courts have applied contract law flexibly to actions
> involving academic and disciplinary decisions by
> educational institutions because of the lack of a
> satisfactory standard of care by which to evaluate
> these decisions. [Citations.] Courts also have been
> reluctant to apply contract law to general promises or
> expectations. [Citation.] Courts have, however, not
> been hesitant to apply contract law when the
> educational institution makes a specific promise to
> provide an educational service . . . .

Id. at 826 (emphasis added).

This focus on a "specific promise" acknowledges the
education malpractice doctrine and ensures judicial efficiency
by allowing most issues to be decided by academic institutions,
who are best positioned to do so.  See, e.g., Abuelhawa v. Santa
Clara University (N.D. Cal., Mar. 29, 2021) 2021 WL 1176689, at
*5 (specific promise requirement is "reinforc[ed] … [by] the
'widely accepted rule of judicial nonintervention into the
academic affairs of schools'" (citation omitted)).

For example, the Kashmiri court found a specific promise in
the university's catalogues and website that explicitly stated
that fee increases "apply to new students only" and that the fee
"[would] remain the same for each student for the duration of
his or her enrollment in the professional degree program."  156
Cal.App.4th at 833.  More recently, a district court found Pace
University's statement that "'[o]n-campus' courses would be
'taught with only traditional in-person, on-campus class
meetings'" was a sufficiently explicit promise to survive
dismissal.  In re Columbia Tuition Refund Action (S.D.N.Y., Feb.
26, 2021) 2021 WL 790638, at *5.

Conversely, a California appellate court found no specific
promise conveyed in a UC-published brochure in which UCLA noted
it was "committed to providing a safe work
environment . . . free from violence or threats of harm."
Regents of University of California v. Superior Court (2015) 193
Cal.Rptr.3d 447, 471, rev'd on other grounds (2018) 4 Cal.5th
607.  Rather than serve as a "specific promise that the
university would undertake a legal duty to protect its students
from third party misconduct," the statement was "in the nature

of a general declaration expressing the importance the university places on the issue of campus safety." Id. at 472. Similarly, university statements promoting the on-campus experience "are merely a general declaration expressing the importance the university places on in-person education," not a "definite, specific, or explicit promise." Abuelhawa, 2021 WL 1176689 at *5, 7 (quotations and brackets omitted).

In its July 28, 2021 ruling, the Court sustained Defendant's prior demurrer in part because Plaintiffs failed to allege any specific promises by Defendant to provide in-person instruction. Although the FAC contains many new allegations and two distinct causes of action (one for Tuition and one for Fees) for breach of implied contract, it still does not identify a specific promise of on-campus instruction.

As Defendant notes, the Court's prior order controls as to the bulk of the FAC because the majority of these allegations are identical to the original consolidated complaint. FAC, ¶¶ 2, 3, 22–23, 31–32, 44, 48, 50, 56, 99–100, 102, 107–13, 116–117. Other allegations have been changed only superficially. FAC, ¶¶ 1, 4, 5, 19–20, 24–30, 33–34, 37–38, 40–41, 49, 55, 57–58, 61, 97–98, 114–115. The Court sustained Defendant's prior demurrer as to "advertisements, catalogs, and brochures," and the enumeration of certain fees. As such, any similar allegations in the FAC are also subject to demurrer. July 28, 2021 Order at 15–16.

As for Plaintiffs' new allegations, they still do not show any specific promise of on-campus instruction. The Court addresses these allegations below.

1)   <u>Promotional Materials</u>

Plaintiffs again emphasize "brochures" and other promotional materials. FAC, ¶¶ 11, 36, 42, 66, 77, 89, 129, 137. However, the specific materials they point to are the same marketing blurbs this Court has already reviewed and rejected. FAC, ¶¶ 66, 77, 89; Order at 15; see also Mooers v. Middlebury College (D. Vt., Sept. 16, 2021) 2021 WL 4225659, at *6 ("[I]n the absence of a specific promise of an in-person education, aspirational or inspirational language about the value of a campus environment does not create an enforceable promise for in-person education"); Polley v. Northwestern University (N.D. Ill., Sept. 15, 2021) 2021 WL 4192076, at *8 ("Descriptions of current student experiences, activities and physical access do

not guarantee the exact same experiences offered in the photographs, words, and descriptions found on the website.")

### 2)   Catalogs and Course Schedules

Plaintiffs again emphasize the "specific catalogs" Plaintiffs received.  FAC, ¶¶ 11, 43, 70-71, 82-84, 93-94, 129, 137.  In the FAC, Plaintiffs attempt to reframe their allegations around each Named Plaintiff's particular class registration experience.  FAC ¶¶ 69-71, 80, 82-84, 92-95.  As before, Plaintiffs suggest it is notable that the class catalog and preliminary registration schedules "reflect . . . assigned building and room numbers."  See, e.g., FAC, ¶¶ 69, 92.  But Plaintiffs do not point to any statement promising that on-campus instruction in these locations was guaranteed.  As Defendant explained in its prior demurrer, its course catalogs all have disclaimers to the contrary.  See Def. RJN, Exh. K at 14, 18 (UCLA: "[A]ll courses, course descriptions, instructor designations, curricular degree requirements, and fees described herein are subject to change or deletion without notice."); id. at 24, 25 (UC San Diego: "All courses, course descriptions, faculty listings, curricular and degree requirements, deadlines, and fees described herein are subject to change or deletion without notice."); id. at 28, 30 (UC Santa Barbara: "All courses, course descriptions, instructor designations, curricular and degree requirements, deadlines, and fees described herein are subject to change or deletion without notice."); see generally Def. RJN, Exh. K (other UC campuses). Courts have repeatedly rejected course catalogs and registration materials as a creating an implied promise for in-person instruction.  See Polley, 2021 WL 4192076, at *8; Espejo v. Cornell University (N.D.N.Y., Mar. 3, 2021) 2021 WL 810159, at *4 (marketing statements "intended to inform potential students of available amenities, do not amount to a contractually-enforceable promise to provide them irrespective of changing or unanticipated circumstances" (emphasis in original, internal quotations and citation omitted); In re Columbia Tuition Refund Action, 523 F.Supp.3d at 423 ("the references to classroom locations and physical attendance requirements in Columbia's syllabi, departmental policies and handbooks, and course registration portal . . . merely memorialize the pre-pandemic practice [and] offered no guarantee that it would continue indefinitely"); Lindner, 2020 WL 7350212, at *8.

### 3)   Fee and Billing Statements

Plaintiffs again emphasize that they have paid tuition and fees. FAC, ¶¶ 59, 60, 64–65, 67–68, 70, 75–76, 78, 84, 90–91, 95, 129–130, 137. Plaintiffs previously alleged this same set of fees students might be expected to pay to attend a UC school, which the Court rejected as insufficient. July 28, 2021 Ruling at 15–16; compare FAC, ¶ 58, with Consolidated Complaint, ¶ 38. Plaintiffs' further allegations in the FAC regarding such fees are similarly deficient. FAC, ¶ 59.

Most of the fees Plaintiffs further describe in Paragraph 59 are Campus Based Fees (CBFs): University Center Fee, Student Transportation Fee, Recreation Facility Fee, ICA Student Activity Fee, and Campus Activity Fee. The Court previously recognized that Defendant acknowledged that those fees may warrant refunds and thus the ongoing administrative review process means that claims for refunds cannot be brought through a breach of contract action. July 28, 2021 Ruling at 16. Indeed, Plaintiffs still have failed to "plead exhaustion of [UC's] refund procedure" with respect to CBFs, and so Plaintiffs cannot possibly pursue any claim based on them. Id. Nor can these CBFs be used to "bootstrap their implied contract theory" by suggesting there was a specific promise for on-campus instruction that might be relevant for tuition or any remaining fees. Id.

The remaining fee in Paragraph 59—the Student Services Fee—is not a CBF, but Plaintiffs' provided explanation of that fee also does not include any specific promise of a particular on-campus service. FAC, ¶ 59. Rather, Plaintiffs explain that this fee is for a general category of "services that benefit the student and are complementary to, but not part of, the instructional program." Id. However, Regents Policy 3101 makes clear that the Student Services Fee does not guarantee any particular service and extends generally to "services related to campus life and campus community." Def. RJN, Exh. L at 2–3.

Plaintiffs' also attach the billing statements of Plaintiffs Boutros, Chen, and Pham to the FAC. FAC, Exhs. A, D, F. However, these billing statements merely list the tuition and fees Plaintiffs would be expected to pay, with no explanation or promise that Plaintiffs would receive in-person instruction or an on-campus experience in return. In fact, the attached billing statements contain a disclaimer that "[a]ctual tuition, fees, and charges are subject to change by the Regents." FAC, Exh. A at 1; Exh. D at 2.

4)   Other Allegations in the FAC

11

Furthermore, Plaintiffs generally allege that Defendant had "a usual and customary practice of providing in-person classes and other on-campus services in connection with its degree programs." FAC, ¶ 18; see also id., ¶¶ 11, 35-36, 42, 129, 137. Plaintiffs emphasize all the ways Defendant's campuses had been built to facilitate on-campus instruction, and point to indications that Defendant would potentially one day return to and expand on-campus instruction in the future. Id., ¶¶ 6-10, 12-15.  Plaintiffs also highlight their own past experiences as "courses of conduct evidencing their mutual understanding that their contracts" necessarily included on-campus services. FAC, ¶¶ 72, 84, 95.

Yet as Defendant correctly notes, these allegations describe what Defendant did, not what it promised to do.  Still missing from Plaintiffs' allegations is any specific promise from Defendant that such historical practices would necessarily continue.  See In re Columbia Tuition Refund Action, 523 F.Supp.3d at 423 (statements about universities' historical practices "offered no guarantee that [they] would continue indefinitely").

Plaintiffs also allege that Defendant's accreditation by the Western Association of Schools and Colleges "is predicated on classes being delivered in-person." FAC, ¶ 12.  Yet beyond generally alleging that students take such accreditation into account when choosing a college to attend, Plaintiffs do not identify any specific representation from the accreditation materials that would justify "the reasonableness of the student's expectation." Kashmiri, 156 Cal.App.4th at 832.  In addition, Plaintiffs do not allege that Defendant's accreditation documents are "circulated to students as part of [Defendant's] offer of an implied contract." Polley, 2021 WL 4192076, at *9.  As such, Defendant's accreditation documents cannot be part of any alleged implied contract.  Id.

### 5)   Plaintiffs' Other Contentions Also Fail.

Plaintiffs urge the Court to adopt a "totality of the circumstances" test in determining whether an implied contract exists.  In contending thus, Plaintiffs ask the Court to piece together Defendant's numerous, disparate representations about on-campus instruction, services, and experiences to create an enforceable implied contract.  However, as Defendants correctly note, Plaintiffs misinterpret Kashmiri.  Although Kashmiri recognized the "reasonable expectation[s] of the parties" are

determined by resort to "the totality of the circumstances," it also made clear the "reasonableness of the student's expectation is measured by the definiteness, specificity, or explicit nature of the representation at issue." 156 Cal.App.4th at 832 (citation omitted). As noted above, Plaintiffs have yet to identify a representation definite, specific, or explicit enough to create a promise for on-campus instruction.

Plaintiffs again contend that the interpretation of an implied contract is an issue of fact not appropriate for resolution on demurrer. However, the Court previously rejected this contention in its ruling on Defendant's prior demurrer.

Plaintiffs further ask the Court to follow Judge Berle's recent ruling in Vakilzadeh v. The Trustees of the California State University, LASC Case No. 20STCV23134. There, Judge Berle overruled California State University's demurrer to the plaintiffs' amended complaint, finding that "defendant historically conducted classes in person or on campus." Warshaw Decl., Exh. 2 at 35. Under the totality of the circumstances and "[c]onstruing the allegations liberally and in context," Judge Berle concluded that such allegations supported the existence of an implied contract under which it was reasonable for the plaintiffs to expect at the time they entered the contract "that defendant would provide traditional in-person, on-campus" courses. Id. at 35–36.

However, the Court disagrees (respectfully) with Judge Berle's ruling. Mere historical practice of in-person instruction is not a specific promise that such practice will continue. In re Columbia Tuition Refund Action, 523 F.Supp.3d at 423. And even a "totality of circumstances" approach under Kashmiri still requires some representation specific enough to be understood as a promise.

c.  Plaintiffs Agreed to Enroll, Paying Tuition and Fees with Knowledge That They Would Not Receive On-Campus Instruction.

The Court sustained Defendant's prior demurrer in part because Plaintiffs were aware and accepted that their experience would be remote by registering for the Spring 2020 quarter. July 28, 2021 Ruling at 17–18. In the FAC, Plaintiffs now allege that "by mid-March 2020 . . . the University of California was not clear about the scope of the campus closures or for how long the closures and transition to remote instruction would last." FAC, ¶ 45; see also ¶¶ 44, 46.

Plaintiffs fail to explain this inconsistency with their prior complaint, which acknowledged that "on-campus educational experiences had been eliminated" by mid-March 2020. Consolidated Complaint, ¶¶ 30-31; see Owens, 198 Cal.App.3d at 384 (discussing sham pleading doctrine).

Even if the Court were to consider the new allegations in the FAC, these new allegations are contradicted by Defendant's judicially noticeable evidence that all students were notified before the March 30, 2020 withdrawal deadline that the entire Spring term would be remote. July 28, 2021 Ruling at 17 ("Defendant responded by informing students that as a consequence of COVID-19 stay-at-home orders, Spring Quarter 2020 would occur remotely." (citing Def. RJN Exhs. B, C)).

Plaintiffs contend that there was a contractual right to on-campus instruction that could not be altered by any "offer of remote-only learning" made in March 2020, because Plaintiffs "each initiated a multi-year contract for in-person classes" when they "were first admitted." Opposition at 13. The Court previously rejected the argument that "the terms of any implied contract with Defendant were set when they first matriculated" because Plaintiffs had not "allege[d] any specific promise that Defendant would never change to online instruction exclusively in any future term." July 28, 2021 Order at 18. Rather, Defendant "charges fees separately prior to each academic term and each student has a choice before each term whether or not to pay." Id. at 18-19.

      d.   Regents Policy 3101 Does Not Necessarily Bar Plaintiffs' Implied Contract Claim as a Matter of Law.

Finally, the parties dispute whether Regents Policy 3101 bars Plaintiffs' implied contract claim. Because there are other grounds for sustaining Defendant's demurrer to Plaintiffs' second and third causes of action, the Court need not address Regents Policy 3101. Nevertheless, Regents Policy 3101 would not bar Plaintiffs' implied contract claim as a matter of law.

In Kashmiri, the Regents waived all argument regarding its unique status under the California constitution and whether its policies should be treated with the force of statute. 156 Cal.App.4th at 830. Yet the Kashmiri court also noted that some of terms of the implied contract at issue were set forth in a written instrument and Code of Civil Procedure § 1859 applies to such written statements. Id. at 834. Section 1859 provides

that a more specific statutory provision controls over more
general provisions:

> In the construction of a statute the intention of the
> Legislature, and in the construction of the instrument
> the intention of the parties, is to be pursued, if
> possible; and when a general and particular provision
> are inconsistent, the latter is paramount to the
> former.  So a particular intent will control a general
> one that is inconsistent with it.

Code Civ. Proc., § 1859.  In addition, "[u]nder well-established
principles of contract interpretation, when a general and a
particular provision are inconsistent, the particular and
specific provision is paramount to the general provision."
Kashmiri, 156 Cal.App.4th at 834 (citation omitted).  Courts
must also interpret contracts so as to give effect to every
part.  Civ. Code, § 1641.  Thus, as the Kashmiri court
ultimately concluded, "[u]nder the interpretation urged by the
University, the specific promise not to raise the [fees] for
continuing students would have no meaning."  Kashmiri, 156
Cal.App.4th at 834.

Here, under Kashmiri and general rules of statutory and
contract interpretation, if Plaintiffs had alleged a specific
promise to provide on-campus instruction, it would control over
more general provisions such as those set forth in Regents
Policy 3101.  However, as noted above, Plaintiffs failed to
allege such a specific promise.  Thus, absent allegations of a
specific promise to provide on-campus instruction, the general
provisions of Regents Policy 3101 would control.

    2.   Plaintiffs Have Not sufficiently Alleged the First
Cause of Action:  Breach of Express Contract

Defendant incorrectly contends that Plaintiffs' breach of
contract should be rejected because the Court did not permit
Plaintiffs to add an express contract claim in the FAC.  The
Court granted Plaintiffs leave to amend their breach of contract
claim, which did not distinguish between express and implied
contracts.  Thus, Plaintiffs properly added a breach of contract
claim to their FAC.

Notwithstanding the foregoing, Plaintiffs fail to allege
sufficient facts to constitute an express contract claim.  An
express contract claim depends on the existence of a "formal
agreement between the students and University" that contains "an

express promise . . . stated in words." <u>Kashmiri</u>, 156
Cal.App.4th at 827.  In their original consolidated complaint,
Plaintiffs alleged that there was no "formal contract with any
material terms . . . prepared between each student and
Defendant."  Consolidated Complaint, ¶ 23.  Plaintiffs have
removed this allegation from their FAC.  FAC, ¶ 39.

Yet as the Court explained in its prior ruling, the sham
pleading doctrine requires plaintiffs to explain inconsistencies
with prior pleadings.  July 28, 2021 Ruling at 10-11.  Here,
Plaintiffs have not explained this inconsistency between the
consolidated complaint and the FAC.  Thus, the Court may
disregard the inconsistent allegations in the FAC in ruling on
Defendant's pending demurrer.

Even if the Court were to consider Plaintiffs' express
contract claim, it would still fail.  In the FAC, Plaintiffs do
not allege any formal agreement that contains an express promise
for in-person instruction.  According to Plaintiffs, "the terms
of those express Fees contracts are evidenced by billing
statements, and further informed by Defendant's websites which
itemize those various campus-based fees."  FAC, ¶ 121; <u>see also</u>
FAC, ¶¶ 56-96.  Yet as discussed above, none of the billing
statements and websites contain an express promise for in-
person, on-campus instruction or experience.

Plaintiffs contend that a summary of fees assessed in
"bills [UC] sent them" are sufficient to create an express,
enforceable contract.  Opposition at 11-12.  But that does not
amount to an "express promise" found in the text of any formal
agreement.  Indeed, as to CBFs, any claim of breach of an
express contract would have to be based on the written referenda
that created the CBFs.  July 28, 2021 Ruling at 15-16; <u>see also</u>
Def. RJN, Exh. Q (PACAOS § 82, explaining CBFs are created
through student vote on referenda language).  Plaintiffs do not
identify language from a single referendum, much less the dozens
across all ten campuses, that could establish an individual
contractual right to a service that has not been provided.

Even if an implied or express contract existed, it would be
unenforceable.  In the FAC, Plaintiffs contradict themselves.
First, Plaintiffs approvingly note Defendant's mandatory
compliance with the stay-at-home order, making the educational
malpractice doctrine inapplicable.  FAC, ¶¶ 44, 47.  At the same
time, Plaintiffs reject Defendant's mandatory compliance with
the stay-at-home order, contending that Defendant should have

violated the law to fulfill its alleged express or implied
contractual obligations.

Assuming that such express or implied contracts exist,
Defendant's performance would likely be excused on the grounds
of temporary impossibility or impracticability, given state and
local stay-at-home orders.  Civ. Code, § 1511 (contract
performance excused "[w]hen it is prevented or delayed by an
irresistible, superhuman cause, or by the act of public enemies
of this state or of the United States, unless the parties have
expressly agreed to the contrary").

At issue here is not simply whether Defendant promised its
students on-campus instruction.  The issue is whether Defendant
promised to provide on-campus instruction to its students during
a statewide emergency caused by a global pandemic, in direct
violation of state and local stay-at-home orders.  Even if
Plaintiffs adequately alleged a contract to provide on-campus
instruction during the COVID-19 pandemic, Defendant's
performance of such contract would have violated state and local
law.  "A contract made contrary to public policy or against the
express mandate of a statute may not serve as the foundation of
any action, either in law or in equity [citation], and the
parties will be left, therefore, where they are found when they
come to a court for relief. [Citation.]"  Tiedje v. Aluminum
Taper Mill. Co. (1956) 46 Cal.2d 450, 453-454.  Thus, even with
an adequately alleged contract, this Court would be powerless to
order Defendant's specific performance to violate state and
local stay-at-home orders, or to compensate Plaintiffs for
Defendant's compliance with the same.

    3.   Plaintiffs Have Not sufficiently Alleged the Fourth
Cause of Action:  Quasi-Contract (Implied in Law)

Previously, the Court sustained Defendant's demurrer to
Plaintiffs' consolidated complaint on all causes of action, with
leave to amend only as to the first cause of action for breach
of contract.  The Court did not grant Plaintiffs leave to amend
their quasi-contract claim because the Court found it failed as
a matter of law.

Contrary to the Court's prior ruling, Plaintiffs again
assert a quasi-contract claim in their fourth cause of action.
Because the Court did not grant Plaintiffs leave to amend their
quasi-contract claim, the Court sustains Defendant's demurrer to
Plaintiffs quasi-contract claim in their FAC.

//

//

D.   <u>Motion to Strike</u>

Because the Court sustains Defendant's Demurrer to all causes of action, without leave to amend, the Court denies Defendant's Motion to Strike as moot.

E.   <u>Leave to Amend</u>

"Liberality in permitting amendment is the rule, if a fair opportunity to correct any defect has not been given." <u>Angie M.</u> <u>v. Superior Court</u> (1995) 37 Cal.App.4th 1217, 1227.  "[H]owever, leave to amend should not be granted where, in all probability, amendment would be futile." <u>Vaillette v. Fireman's Fund Ins.</u> <u>Co.</u> (1993) 18 Cal.App.4th 680, 685.  The Court denies leave to amend because each of Plaintiffs' causes of action again fail as a matter of law and further amendment would be futile.

III.
CONCLUSION

Based upon the foregoing, the Court orders that:

1)   Defendant The Regents of the University of California's Demurrer to First Amended Consolidated Complaint (FAC) is SUSTAINED, without leave to amend.

2)   Defendant The Regents of the University of California's Motion to Strike FAC is MOOT.

3)   The Parties' Requests for Judicial Notice are GRANTED, (except as to truth).

CLERK TO GIVE NOTICE TO ALL PARTIES.

IT IS SO ORDERED.

DATED:     March 29, 2022

**YVETTE M. PALAZUELOS**

_____
YVETTE M. PALAZUELOS
JUDGE OF THE SUPERIOR COURT